**Ryan Cameron FOSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–08–00457–CR.**

Court of Appeals of Texas, Austin.

Aug. 6, 2009.

Rehearing Overruled Nov. 4, 2009.

---

William G. Swaim III, Assistant County Attorney, Austin, TX, for appellant.

Giselle Horton, Assistant County Attorney, Meril "Gene" Anthes, Jr., Gunter & Bennett, PC. Austin, TX, for State.

Before Chief Justice JONES, Justices PURYEAR and HENSON.

## *OPINION*

DIANE M. HENSON, Justice.

The State charged Ryan Cameron Foster with the Class B misdemeanor of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). Following the trial court's denial of Foster's motion to suppress, Foster pleaded no contest. The court sentenced him to 120 days' confinement and a $2,000 fine, but suspended imposition of this sentence and placed him on community supervision for eighteen months. In one point of error, Foster argues that the trial court erred by not suppressing evidence obtained by the police during his investigative detention and subsequent arrest because the police did not have reasonable suspicion to investigate him for driving while intoxicated. Because Foster's detention was not supported by reasonable suspicion, we reverse the order of the trial court.

## BACKGROUND

On September 13, 2007, at approximately 1:30 a.m., Kurt Thomas, an Austin Police Department detective, was stopped at a red traffic light in downtown Austin at the intersection of Eighth Street and the southbound frontage road of Interstate 35, near the downtown Austin police station.[1]

Thomas testified that while he was stopped at the traffic light, Foster drove up behind him in a Ford F–150 truck, with his headlights shining directly into Thomas's rearview mirror. Foster pulled extremely close to Thomas's unmarked vehicle, but did not actually make contact with Thomas's vehicle. According to Thomas, he heard a revving sound and noticed Foster's truck lurch forward once, then a second time, as if attempting to maneuver into the empty lane to the left. During the second lurching movement, Foster's vehicle moved slightly to the left but could not move into the empty lane because it was too close to Thomas's vehicle.

Immediately after the second lurching movement, a marked Austin Police Department patrol car driven by Sergeant Eric De Los Santos pulled alongside Thomas and Foster. Because Foster's truck was stopped on a two-lane, one-way street, he was effectively prevented from moving by the presence of the two police vehicles. Thomas and De Los Santos then exited their respective vehicles and approached Foster.

Upon approaching Foster's vehicle, Thomas and De Los Santos detected the odor of an alcoholic beverage. Foster was removed from his truck and a responding DWI enforcement officer conducted field sobriety tests, resulting in Foster's arrest for driving while intoxicated.

In a pretrial motion, Foster moved to suppress all evidence obtained as a result of the stop on the grounds that his detention was improper because it was not supported by reasonable suspicion. The trial court denied the motion to suppress, making express findings that Thomas's testimony was credible and that Thomas had reasonable suspicion to detain Foster in light of the time of night, the location near Austin's downtown bar district, and Foster's erratic driving, particularly the two lurching movements described in Thomas's testimony. This appeal followed.

---

1. The facts recited herein are drawn from the testimony and exhibit admitted at the pretrial suppression hearing.

## DISCUSSION

On appeal, Foster contends that the trial court erred in denying the motion to suppress because the stop violated the prohibition of unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. In response, the State argues that Foster was not detained until he was removed from his truck, at which time Thomas had not only observed Foster driving in an erratic fashion late at night near a bar district, but had also detected the odor of alcoholic beverages coming from Foster's vehicle. The State also argues that Thomas was justified in detaining Foster because he had reasonable suspicion that Foster had committed the traffic offenses of unsafe start from a stop position and reckless driving.[2]

### Standard of Review

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a de novo review of the court's application of law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App.2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim.App.2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). When reviewing the trial court's decision, an appellate court views the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim. App.1999). The trial court's ruling must be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). This rule holds true even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App.2003).

### The Detention

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Carmouche*, 10 S.W.3d at 328. When a warrantless seizure occurs, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App.2007). "[R]easonable suspicion requires 'that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime.'" *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997) (quoting *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992)). A reasonable suspicion means more than a mere hunch or non-specific suspicion of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex.App.-Austin 2007, no pet.). We take into consideration experienced police officers' perceptions and review their perceptions objectively, rather than subjectively. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex.Crim.App.2005). The reasonableness of a temporary detention must be examined by considering the totality of the

---

2. At the suppression hearing, the State did not contend that the detention occurred only after Thomas and De Los Santos detected the odor of alcoholic beverages, nor did it argue that the detention was justified by any traffic violations. Instead, the State took the position that Thomas had reasonable suspicion to detain Foster based on his unsafe and erratic driving, combined with the lateness of the hour and the proximity of the Sixth Street bar district.

circumstances at its inception and the detention will only be justified if the officer can point to specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Id.; Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim.App.2001). We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### When was Foster detained?

■ The State argues that because Foster's truck was "at a standstill of its own accord," Foster was not detained until he was removed from his truck and only after the officers detected a strong odor of alcoholic beverages coming from the vehicle. In essence, the State argues that the two officers were simply initiating a consensual encounter with Foster which then turned into an investigative detention when they detected the odor of alcoholic beverages.

■ An investigative detention is distinguishable from a consensual encounter, which does not infringe on a constitutional right and requires no justification. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). An officer without reasonable suspicion of criminal activity may question an individual during a consensual encounter, "as long as the person to whom questions are put remains free to disregard the questions and walk away." *United States v. Men-*

denhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). However, an investigative detention occurs when a person's freedom of movement is restrained, either by physical force or a show of authority. *Johnson v. State*, 912 S.W.2d 227, 236 (Tex.Crim.App.1995). A detention occurs when a person yields to an officer's show of authority or when a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Velasquez*, 994 S.W.2d 676, 678–79 (Tex.Crim.App.1999). Determining at what point in time someone is detained is a question of law. *Davis v. State*, 22 S.W.3d 8, 11 (Tex.App.-Houston [14th Dist.] 2000, no pet.). An investigative detention constitutes a seizure and invokes constitutional safeguards. *Mendenhall*, 446 U.S. at 553, 100 S.Ct. 1870.

In this case, Foster was stopped on a two-lane, one-way street when he found himself barricaded on the front and side by two vehicles, one of which was a marked police car. While Foster was hemmed in by the two vehicles, police officers exited from the vehicles and began approaching his truck. Under such circumstances, a reasonable person would not only feel that he was not free to leave, but would be physically prevented from doing so, absent an attempt to exit the vehicle and flee on foot. On that basis, we hold that Foster was detained at the time the police officers blocked his vehicle, preventing him from leaving the scene, and began to approach. Thus, the detention must be justified based on the totality of the circumstances at that time.[3]

---

**3.** The State cites *Martin v. State*, 104 S.W.3d 298, 301–02 (Tex.App.-El Paso 2003, no pet.), in which the court held that a police officer, by pulling up behind a vehicle broken down at an intersection and turning on his lights to

warn approaching traffic of the stopped vehicle, merely instigated a consensual encounter, rather than a detention. However, the facts of *Martin* are distinguishable from the present case, as Foster's vehicle was not broken down

### Reasonable Suspicion

On appeal, the State presents two theories to justify the stop. First, the State argues that Thomas was justified in detaining Foster based on reasonable suspicion that a traffic offense had occurred. *See Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Crim.App.1982) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop."). Second, the State argues that the stop was justified based on reasonable suspicion that Foster was intoxicated. *See Hernandez v. State,* 983 S.W.2d 867, 870 (Tex.App.-Austin 1998, pet. ref'd) (reviewing "reasonableness of the stop on the basis of a suspicion that appellant was intoxicated"). We will examine each of these theories in turn.

*1. Was there reasonable suspicion of a traffic offense?*

■■■■■■ The State contends on appeal that Thomas was justified in making the stop because he had reasonable suspicion that Foster had committed the traffic violations of unsafe start from a stop position and reckless driving. *See* Tex. Transp. Code Ann. §§ 545.401(a), .402 (West 1999).[4] An officer may legally initiate a detention if he has a reasonable basis for suspecting that a person has committed a traffic offense. *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App.1992). A traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense. *Whren v. United States,* 517 U.S. 806, 808, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). There is, however, no requirement that an actual traffic offense be committed, just that the officer reasonably believed that a violation was in progress. *Davy v. State,* 67 S.W.3d 382, 393 (Tex.App.-Waco 2001, no pet.); *Gajewski v. State,* 944 S.W.2d 450, 452 (Tex. App.-Houston [14th Dist.] 1997, no pet.).[5]

In the instant case, Thomas testified at the suppression hearing that Foster drove up and stopped extremely close to his vehicle at a traffic light, but that he did not hear any sounds of tires screeching as Foster approached. Thomas then heard a revving sound from Foster's engine and observed the truck make two forward lurching movements. Based on these movements, Thomas concluded that Foster was attempting to move into the next traffic lane, but was too close to Thomas's vehicle to do so. Foster's vehicle never actually left his lane or made contact with Thomas's vehicle. Thomas testified that he considered Foster's driving to be unsafe, and that, in light of the time of night and proximity to the local bar district, he suspected that the driver was impaired.

■■■ Viewing Thomas's observations objectively, we conclude that the circumstances did not warrant a reasonable belief that Foster had committed a traffic violation at the time he was detained. Poor or

---

in the roadway, creating a potential hazard for approaching traffic, but was stopped at a traffic light when the police vehicles blocked his path and prevented him from leaving the scene.

4. Section 545.402 provides, "An operator may not begin movement of a stopped, standing, or parked vehicle unless the movement can be made safely." Tex. Transp. Code Ann. § 545.402 (West 1999). Section 545.401(a) provides, "A person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a) (West 1999).

5. On the other hand, reasonable suspicion of an alleged traffic violation cannot be based on a police officer's mistaken understanding of traffic laws. *See United States v. Granado,* 302 F.3d 421, 423 (5th Cir.2002); *Fowler v. State,* 266 S.W.3d 498, 504 (Tex.App.-Fort Worth 2008, pet. ref'd).

even rude driving habits do not necessarily translate into traffic violations. There was no evidence that Foster was out of control at the time he stopped behind Thomas's vehicle or that he was otherwise driving recklessly. Foster's vehicle never actually left its lane of traffic, nor was there any evidence that it was dangerous to change lanes at the time Foster appeared to be attempting to do so. Foster may very well have intended to move into an open traffic lane while waiting at a traffic light and simply realized, after beginning to initiate the lane change, that he did not have sufficient room to maneuver—a common driving scenario that does not rise to the level of a traffic violation. Based on the totality of the circumstances, we hold that reasonable suspicion did not exist to justify the detention of Foster's vehicle in order to investigate the two proffered traffic violations of unsafe start from a stop position and reckless driving.

2. *In the absence of a traffic offense, was there reasonable suspicion of intoxication?*

The trial court determined that Foster's two lurching movements, when combined with the late hour and proximity of the Sixth Street area, were sufficient to justify the detention for the purpose of investigating whether the driver was intoxicated. We disagree. As previously discussed, the lurching movements were not unreasonably dangerous, reckless, or even inexplicable. While the Court of Criminal Appeals no longer employs the "as consistent with innocent activity as with criminal activity" test for reasonable suspicion, the plausibility of an innocent explanation in this case affects our determination of whether there was a reasonable basis for suspecting that Foster was intoxicated. *See Curtis v. State,*

238 S.W.3d 376, 379 (Tex.Crim.App.2007). Intoxication cannot be inferred from the lurching movements alone, and while the lurching movements may be more suggestive of intoxication when combined with the location and time of night, the combined weight of these circumstances is not so much greater than the aggregation of their individual weights that it allows for a rational inference of intoxication. Time of day, by itself, is "owed virtually no weight" as a factor in determining reasonable suspicion. *State v. Thirty Thousand Six Hundred Sixty Dollars & No/100,* 136 S.W.3d 392, 400 (Tex.App.-Corpus Christi 2004, pet. denied). Similarly, location is generally "an insufficient basis for a rational inference that would lead to a reasonable suspicion." *Id.* at 401.[6] Furthermore, Thomas's testimony that the lurching movements led him to suspect that Foster was intoxicated does not necessarily establish that this suspicion was reasonable. *See Richardson v. State,* 39 S.W.3d 634, 640 (Tex.App.-Amarillo 2000, no pet.) (holding that detention was not justified despite officer's testimony that he stopped vehicle going substantially slower than speed limit on suspicion that driver was intoxicated); *see also Garcia,* 43 S.W.3d at 530 (stating that "reasonable suspicion is an objective determination" and that while "we give almost total deference to the trial court in determining what the actual facts are, . . . we review *de novo* whether those facts are sufficient to give rise to reasonable suspicion").

We find the present case to be similar to the facts before us in *State v. Guzman,* 240 S.W.3d 362, 365 (Tex.App.-Austin 2007, pet. ref'd), in which an officer initiated a traffic stop based on a driver spinning his

6. We note also that the proximity of the downtown Austin police station to the inter-section where the incident occurred would seem to diminish the weight of this factor.

vehicle's tires at a downtown intersection at night. In affirming the trial court's order granting the driver's motion to suppress because the detention was not justified by reasonable suspicion, the majority declined "to hold that an officer may lawfully detain on suspicion of intoxication any driver who is seen by the officer to spin a tire at a downtown intersection at night." *Id.* at 368. Likewise, we today decline to hold that an officer may lawfully detain on suspicion of intoxication any driver who is seen making lurching movements at a downtown intersection at night. On that basis, we conclude that reasonable suspicion did not exist to justify Foster's detention for DWI. Because the trial court erred in not suppressing the evidence resulting from the illegal detention, we sustain Foster's sole issue on appeal.

## CONCLUSION

Based on the totality of the circumstances, we hold that reasonable suspicion did not exist to justify Foster's detention. Therefore, the trial court erred in denying Foster's motion to suppress. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

Dissenting Opinion by Justice PURYEAR.

DAVID PURYEAR, Justice, dissenting.

Because the majority improperly substitutes its judgment for those of the police detective and the trial court and fails to give proper deference to the trial court's and detective's determinations, I respectfully dissent.

At the hearing on Foster's motion to suppress, Detective Thomas testified that before becoming a detective, he had worked traffic patrol and received traffic and DWI training. At about 1:30 a.m., on September 13, 2007, he was driving his unmarked car back to the police station and was within a few blocks of Austin's bar district. He stopped at a red light, and a pick-up truck driven by Foster came up behind Thomas, stopping "extremely close" to Thomas's car. After coming to a stop, Foster lurched forward twice and revved his engine. Thomas believed the second lurch was an attempt to change lanes but said Foster's truck was too close to the rear of Thomas's car to be able to move into the other lane. Thomas said, "I don't know what he was trying to do. To me, he wasn't exhibiting normal driving behaviors." Thomas believed Foster's driving was unsafe because "he was lurching right behind my vehicle. It alarmed me and caused me to have concern that he might strike my vehicle." Thomas testified that Foster's front bumper was only inches away from Thomas's rear bumper and that Foster could not have changed lanes without hitting Thomas's car. Thomas further testified that, based on his training and experience, people driving in the area late at night often were impaired. He knew there were numerous DWI arrests in the same area at the same time of night and agreed that it would be "natural" to suspect that erratic or unsafe driving occurring in the same area of town might be the result of an impaired or intoxicated driver. Thomas testified, "I believed what was occurring behind me was unsafe, and I was concerned that— due to where we were at downtown and the time of night, I was concerned that maybe this driver was impaired."

It is noteworthy that the majority fails to expressly acknowledge that an officer may lawfully detain a driver who has committed no traffic offense but is suspected of driving while intoxicated. A long line of authority recognizes that an officer may have reasonable suspicion to investigate whether a driver is impaired without hav-

ing witnessed a traffic violation. *See, e.g.,* *Gajewski v. State,* 944 S.W.2d 450, 452 (Tex.App.-Houston [14th Dist.] 1997, no pet.) ("Although not an inherently illegal act, when the officer observed appellant's car weaving between traffic lanes, reasonable suspicion existed to believe appellant was driving the motor vehicle while intoxicated."); *Davis v. State,* 923 S.W.2d 781, 784, 788 (Tex.App.-Beaumont 1996), *rev'd on other grounds,* 947 S.W.2d 240 (Tex. Crim.App.1997) (car swerved within its lane three times; although no traffic violation, stop was proper because there was reasonable suspicion that driver was impaired); *Fox v. State,* 900 S.W.2d 345, 347 (Tex.App.-Fort Worth 1995, pet. dism'd, improv. granted) ("Although none of the acts in which Fox engaged prior to the initiation of the stop were inherently illegal, each was sufficient to create a reasonable suspicion that some activity out of the ordinary was or had occurred."); *Townsend v. State,* 813 S.W.2d 181, 185 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd) (swerving was not traffic violation, but stop was proper because "behavior was sufficient to raise a reasonable suspicion of driving while intoxicated").

We are supposed to consider the reasonableness of a brief investigative detention in light of the totality of the circumstances at the time of the start of the detention, requiring the police officer to point to specific, articulable facts that, when combined with rational inferences that may be drawn from those facts, would lead to a reasonable suspicion that the detained individual had, would soon be, or was presently engaged in criminal activity. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App. 2001); *Tanner v. State,* 228 S.W.3d 852, 855 (Tex.App.-Austin 2007, no pet.). We must ask whether a police officer had a "minimal level of objective justification," *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quot-

ing *Immigration & Naturalization Servs. v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)), bearing in mind "commonsense judgments and inferences about human behavior," *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

Although an officer may not stop someone based solely on a hunch, reasonable suspicion requires significantly less basis than probable cause. *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). We apply "an objective standard" and ask whether the facts available to the officer at the time of the detention would allow a reasonable officer to believe that the detention was appropriate. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In doing so, "we should avoid a formulaic approach or a piecemeal comparison of similar factors in other cases, and instead consider the totality of the circumstances in *this case* and rely on commonsense inferences." *Tanner,* 228 S.W.3d at 857; *see Arvizu,* 534 U.S. at 273, 276, 122 S.Ct. 744 (courts should avoid considering facts in isolation and instead ask whether officer was justified in drawing inferences from all information available at time of stop); *Ornelas v. United States,* 517 U.S. 690, 698, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 n. 11, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (determination in one case will seldom be useful in another).

As the Supreme Court has said,

as a general matter determinations of reasonable suspicion ... should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by

resident judges and local law enforcement officers.

A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.

*Ornelas,* 517 U.S. at 699, 116 S.Ct. 1657; *see also Tanner,* 228 S.W.3d at 856 (appellate court viewing trial court's determination of reasonable suspicion should "give almost total deference to the court's determination of historical facts but review de novo its application of the law to the facts"; in absence of explicit findings of facts, appellate court should "view the evidence in the light most favorable to the court's ruling and assume the court made implicit findings of fact supported by the record"; trial court is sole judge of witness credibility).

The majority's analysis is deeply flawed and disregards direct instructions provided to us by superior courts on how we should conduct a reasonable-suspicion analysis. In particular, although the majority acknowledges that the "as consistent with innocent activity as with criminal activity" test has been disapproved and that we should consider the totality of the circumstances, *see Curtis v. State,* 238 S.W.3d 376, 378–79 (Tex.Crim.App.2007), the opinion goes on to state that the "plausibility of an innocent explanation in this case affects our determination" and that "[t]ime of day, by itself, is 'owed virtually no weight' as a factor in determining reasonable suspicion." *See State v. Thirty Thousand Six Hundred Sixty Dollars and No/100,* 136 S.W.3d 392, 400 (Tex.App.-Corpus Christi 2004, pet. denied). That sort of piecemeal analysis of the various facts in isolation is exactly the kind of analysis disapproved by the Supreme Court in *Arvizu,* 534 U.S. at 273–76, 122 S.Ct. 744. Indeed, the court of criminal appeals recently reversed an appellate court's reversal of a trial court's overruling of a motion to suppress, stating that although the behavior in question might in a vacuum have appeared to be perfectly innocent, when viewed in light of all of the circumstances, including the officer's experience in detecting impaired drivers, the "lateness of the hour," and rational inferences that could be drawn from the facts, the trial court "could have reasonably concluded that the articulated facts gave rise to enough suspicion to justify at least an investigation." *Curtis,* 238 S.W.3d at 380–81 (quoting *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997)).

In this case, as was disapproved in *Curtis,* the majority improperly disregards the lateness of the hour and the location in which Foster was driving, *see id.,* and contrary to guidance from the Supreme Court, fails to give proper deference to the inferences Thomas, an experienced police detective, reasonably drew from the totality of the circumstances, and the trial court's determination of credibility and other factual matters, *see Ornelas,* 517 U.S. at 699, 116 S.Ct. 1657. Late at night, or more properly, very early in the morning, mere blocks from Austin's well-trafficked bar district and across the street from the police station, Foster pulled within inches of Thomas's car, revved his engine, lurched toward Thomas's car once, and lurched a second time as if to try to pull into the next late, despite the fact that there was no room for him to maneuver out of the lane. Viewing all of this as a totality, I would hold that "the trial court could have reasonably concluded that the articulated facts gave rise to enough suspicion to justify at least an investigation" into whether Foster lacked his full faculties and was impaired. *Curtis,* 238 S.W.3d

at 381. Thomas's decision to investigate was not an "arbitrary invasion" of Foster's rights, and the interaction would not have occurred had Foster not come within inches of hitting Thomas's car and attempted a lane-change he obviously could not complete.

The majority should have constrained its inquiry to answering only this question: giving appropriate deference to the trial court's determination of historical facts and credibility and to Detective Thomas's experience and training, was it reasonable for Thomas to suspect, in light of the articulated facts, *including* the lateness of the hour and area of town in which the incident occurred, that Foster might be impaired? Instead, the majority re-evaluated the facts, substituted its judgment for that of the trial court, and decided that the facts do not sound reasonable to it. Because this is an improper analysis of whether Thomas had reasonable suspicion to conduct a brief investigative detention of Foster, I must dissent.