COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-126-CR

 

BONNIE
MILLER REED                                                                      APPELLANT

 

                                                             V.

 

THE
STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

           FROM COUNTY CRIMINAL
COURT NO. 3 OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  Introduction

Appellant Bonnie Miller Reed
challenges the trial court=s denial of her motion to suppress in
a driving while intoxicated (DWI) case. 
In one issue, Reed argues that the trial court erred by finding
reasonable suspicion existed for her detention on suspected DWI.  We affirm.








II.  Factual and Procedural Background

Bedford Police Officer Chris Miller
was the only witness at Reed=s suppression hearing.[1]  In addition to testifying that he had been a
police officer for three years and had attended specialized training for field
sobriety tests, he also testified to the following. 








While out on routine patrol around
12:45 a.m. on February 12, 2008, he had seen a vehicle driving eastbound on
State Highway 183 veer onto the shoulder of the roadway.[2]  When asked to describe how far the vehicle
had crossed over onto the shoulder, Officer Miller stated, A[I]f you divide the vehicle down the
middle, I would say the right-hand, or the passenger compartment, was off of
the roadway on the shoulder.  The driver=s side, or the left side, was still
in the roadway.@ 
Officer Miller activated his in-car video camera at that time and
proceeded to follow the vehicle.  He
observed the driver, later identified as Reed, turn on her right-hand turn
signal when there were no exits or roads to turn onto and leave the signal on
for approximately one-quarter to one-half mile before moving into the exit
lane.  Officer Miller again saw Reed=s vehicle veer onto the shoulder of
the roadway before it exited.  Officer
Miller stated and the videotape confirmed that when Reed=s vehicle veered onto the shoulder
the second time, A[t]he passenger tires [were] clearly
over the line.@ 

Officer Miller testified that
although he had not seen Reed entering or leaving a bar, she had been driving
away from an area of Bedford that contained several bars and restaurants that
served alcohol, and that he had previously pulled over other drivers for DWI in
that same area.  When asked about Reed=s driving and the surrounding
conditions, Officer Miller stated that Reed=s movements had not been jerky or violent but had been more
like a gradual drift, that the traffic on the roadway had been light, and that
Reed had not posed an immediate danger to any other vehicles.  Officer Miller also stated that, based on his
experience and training, intoxicated drivers sometimes drift. 

Finally, Officer Miller testified
that in addition to the probable cause from the traffic violationsCthat is, failure to maintain a single
lane and illegal use of a turn signalChe had stopped Reed because he suspected that she might be
intoxicated based on her driving, the time of day, the area of the city that
she had been coming from, and his experience with intoxicated drivers
exhibiting similar driving characteristics.

After hearing all the evidence, the
trial court denied Reed=s motion to suppress, and on March
18, 2009, it entered findings of fact and conclusions of law.  The trial court=s findings were:








The [trial court]
finds there was no traffic violation under Section 545.060(a) [of the]
Transportation Code.  There is no
evidence that the Defendant=s failure to drive in a single lane was unsafe.  The use of the turn signal was not done in an
illegal manner.  There was no probable
cause for the stop.  This leaves the
question of whether there was reasonable suspicion to justify the stop.

 

The reasons against
the unlawfulness of the detention in this case are:

 

         1. 
No traffic violation.

2.  Not weaving within the lane.

3.  Nothing unsafe about weaving on to the
shoulder.

4.  Very light traffic.

5.  No erratic speed changes.

6.  Driving within the speed limit.

 

The reasons for the
lawful detention in this case are:

 

1.  Crossing on to the shoulder of the roadway by
one-half width of the vehicle.

2.  Crossing on to the shoulder a second time by
a few inches.

3.  Unusual use of turn signal.  Turn[ed] on when not approaching an exit and
kept on for an unusual length of time for approximately one-half mile.

4.  Leaving the bar area of the city at
approximately 12:45 a.m.

5.  Based on the Officer=s
training and experience, intoxicated drivers show these characteristics of
driving.

6.  Based on his training and experience, the
officer suspected the driver might be intoxicated.

 








The trial court concluded that Athe articulated facts justifying the
stop were sufficient to overcome the articulated facts mitigating against the
stop and were sufficient to give Officer Miller a reasonable suspicion to
detain [Reed] for further investigation.@  Thus, Reed=s AFourth Amendment rights under the United States Constitution
and under Article 1[,] Section 9 of the Texas Constitution were not violated.@

Reed subsequently pleaded guilty to
the offense of DWI but preserved her right to appeal the denial of the motion
to suppress.  The trial court sentenced
Reed to fifteen days= confinement and assessed a $500
fine.  This appeal followed.

III.  Discussion

In her sole issue, Reed argues that
the trial court erred by concluding that Officer Miller had reasonable
suspicion, under both the United States and Texas constitutions, to stop her
for suspected DWI.[3]

A. 
Standard of Review








We review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We give almost total deference to a trial
court=s rulings on questions of historical
fact and application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor, but we review de novo application-of-law-to-fact
questions that do not turn on credibility and demeanor.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State,
68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002). 

B. 
Applicable Law

The Fourth Amendment protects against
unreasonable searches and seizures by government officials.  U.S. Const. amend. IV; Wiede v. State,
214 S.W.3d 17, 24 (Tex. Crim. App. 2007). 
To suppress evidence because of an alleged Fourth Amendment violation,
the defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador,
221 S.W.3d at 672.  A defendant satisfies
this burden by establishing that a search or seizure occurred without a
warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id. at 673; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).








A detention, as opposed to an arrest,
may be justified on less than probable cause if a person is reasonably
suspected of criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex.
Crim. App. 2000).[4]  An officer conducts a lawful temporary
detention when he or she has reasonable suspicion to believe that an individual
is violating the law.  Ford, 158
S.W.3d at 492.  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person is,
has been, or soon will be engaged in criminal activity.  Id. 
This is an objective standard that disregards any subjective intent of
the officer making the stop and looks solely to whether an objective basis for
the stop exists.  Id.

C. 
Analysis

In her sole issue, Reed argues that
neither the trial court=s findings nor Officer Miller=s testimony rises to the level of
proof required for an investigative detention for DWI.  Reed cites several cases in support of her
argument.  See Fowler v. State,
266 S.W.3d 498, 505 (Tex. App.CFort Worth 2008, pet. ref=d); State v. Palmer, No.
02-03-00526-CR, 2005 WL 555281, at *1, 3 (Tex. App.CFort Worth Mar. 10, 2005, pet. dism=d) (mem. op., not designated for
publication); State v. Arriaga, 5 S.W.3d 804, 807 (Tex. App.CSan Antonio 1999, pet. ref=d); State v. Tarvin, 972
S.W.2d 910, 912 (Tex. App.CWaco 1998, pet. ref=d). 
These cases, however, are all distinguishable.








In Fowler, the officer
testified that he had initiated the stop because Fowler=s truck had crossed into an adjacent same‑direction
lane by a tire=s width and had drifted within its
own lane on two occasions.  266 S.W.3d at
499.  In Arriaga, the officer
testified that he had initiated the stop because Arriaga=s vehicle had drifted out of its lane
on multiple occasions.  5 S.W.3d at
807.  And in Tarvin, the officer
testified that he had initiated the stop because Tarvin=s vehicle had been weaving within its
own lane of traffic.  972 S.W.2d at
912.  Here, however, Officer Miller not
only testified that he had stopped Reed because of her driving violations, but
also because he had suspected that she might be intoxicated based on the time
of day, the area of the city that she had been coming from, and his experience
with intoxicated drivers exhibiting similar characteristics of driving.  See Curtis v. State, 238 S.W.3d 376,
380B81 (Tex. Crim. App. 2007) (applying
the totality of the circumstances test and concluding that a rational inference
could be made that the driver was intoxicated based on the driver=s weaving, the time of day, and the
officer=s experience).








In Palmer, the officer
testified to facts similar to those in this case.  See 2005 WL 555281, at *1B2. 
However, the trial court in Palmer granted the defendant=s motion to suppress and did not
enter findings of fact or conclusions of law. 
This court, on appeal, noted that the videotape from the officer=s in-car camera did not support the
officer=s assertion that the driver had
applied his brakes in a sudden and unsafe manner.  Id. 
Thus, we concluded that, under the totality of the circumstances, the
facts were insufficient to support reasonable suspicion.  Id.

This appeal differs from Palmer
in that the trial court here entered findings of fact and found Officer Miller=s testimony to be credible.  Furthermore, the videotape from Officer
Miller=s in-car camera supports his
testimony.  Thus, after giving almost
total deference to the trial court=s rulings on application-of-law-to-fact questions that turn
on credibility and demeanor and reviewing de novo those rulings that do not, we
conclude that the totality of the circumstances surrounding the stop, support a
reasonable suspicion that Reed was driving while intoxicated.  Therefore, the trial court did not err by
denying Reed=s motion to suppress.  Accordingly, we overrule Reed=s first issue.

IV.  Conclusion

Having overruled
Reed=s sole issue, we affirm the trial
court=s judgment.

 

 

BOB MCCOY

JUSTICE

 

 

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

 

PUBLISH

DELIVERED: March 11, 2010















 
 
 
 
 
 
 




 

 

 

COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                                 NO.
2-09-126-CR

 

BONNIE MILLER REED                                                                      APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

           FROM
COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                                       ------------

 

                                         DISSENTING OPINION

 

                                                       ------------

I, frankly, am reluctant to write
this dissent because I am concerned that it could be construed as criticism of
an officer who in all ways displayed a conscientious respect for the law and
treated Appellant with courtesy.  In
short, Officer Chris Miller behaved as I would hope all our law enforcement
officers would.  But I must respectfully
dissent from the majority opinion because I do not believe that the record
supports a finding that Officer Miller had reasonable suspicion to detain
Appellant when the officer turned on his overhead lights and Appellant
submitted to his show of authority.








The majority states that Officer
Miller was driving eastbound on Highway 183, also known as Airport Freeway, at about
12:45 a.m. when he noticed Appellant=s dark-colored Volkswagen driving in front of him on the
highway.  Although the majority is
correct in stating that he testified that the time was 12:45 a.m., the record
actually shows that Officer Miller first saw Appellant=s vehicle twenty minutes earlier at
12:25 a.m:  

Q.      Okay.  So it wasn=t 12:45, 1:00?

A.      When I initially
observed the vehicle?

Q.      Correct.

A.      Yes, that=s correct.   

Specifically, Officer Miller
testified, AThis was noted in my report that it was
25 minutes after midnight on the date in question.@ 








As the majority notes, he testified
that Appellant Ahad been driving away from an area of
Bedford that contained several bars and restaurants that served alcohol@ and that he had previously pulled
over other drivers for driving while intoxicated (DWI) in that same area.[1]  But the video reveals that Appellant was on a
freeway that is a major state highway with restricted ingress and egress and
that passes through residential areas, warehouse areas, office areas, and areas
with bars and restaurants.  The portion
of Highway 183 visible on the videotape made by Officer Miller is raised and
well separated from the structures along the access road.  He did not see Appellant enter the freeway.  He first saw her driving on Highway 183.

Officer Miller testified that he Awas on routine patrol [and] was
driving westbound [sic] on 183 about to get on 121 and go north. . . .  There was aCit was a dark-colored Volkswagen four-door sedan driving in
front of [him] on the highway.@ 
On cross-examination he clarified his testimony:

A.      Again, it=s justCit=s just
an observation.  I=m not
saying that she was leaving a bar.  It
was just I observed her leaving a part of our city that has many bars.  It=s just an observation.

 

Q.      And you
didn=t see her on any side streets because, I mean, you can=tClet me
back up.  You would have to get off the
highway or get on to the highway to get to or leave from a bar in Bedford,
right?

 

A.      Yes.

 

.
. . . 

 

Q.      So you just
see her driving down the highway.  You
never saw her enter onto the highway; is that correct?

 

A.      No.

 

.
. . .

 

Q.      So, again, you didn=t ever
see her leave a bar?

 

A.      No, I didn=t see her leave a bar.








Officer Miller testified that he never
saw Appellant enter or leave a bar or a restaurant; he only saw her drive past
bars and restaurants on a major state highway that passes above them.  If we hold that merely driving past a bar
provides reasonable suspicion justifying the detention of a motor vehicle and
requiring the driver to submit to questioning and field sobriety tests, every
person leaving downtown Fort Worth, or driving down 6th Street in Austin, or
driving down a highway or freeway through any commercial area will be fair game
to be pulled over, questioned, searched for the officer=s safety, and hauled out of the car
to perform feats of line-walking, nose-touching, and balancing on one
foot.  Indeed, if one lives across the
street from fraternity row, one should be prepared to be pulled over every time
he leaves home because everyone knows fraternity houses are rife with alcohol.

The majority says that Officer Miller
testified that he believed that Appellant was driving while intoxicated because
of the time of night, her driving, the area of the city that she had been
coming from, and his experience with intoxicated drivers exhibiting similar
driving characteristics.[2]  But Officer Miller actually testified that it
was less the time of night than the fact that it was night:

Q.      But, nevertheless,
it=s not in your report what time it was or Cit doesn=tCyour
report is not reflective ofC

 

A.      I think
it=s fair to say that the number of impaired drivers
increase[s] in the nighttime hours especially leaving an area of the City that
has several bars or restaurants thatCif you will, that serve alcohol.








Our sister court in Austin was faced with a similar set of
circumstances in Foster v.  State.[3]  First, the Foster court noted,

While the Court of
Criminal Appeals no longer employs the Aas consistent with innocent activity as with criminal
activity@ test for reasonable suspicion, the plausibility of an
innocent explanation in this case affects our determination of whether there
was a reasonable basis for suspecting that Foster was intoxicated.[4]


 

With that caveat in mind, I would
look at the trial court=s determination of credibility; that
is, the trial court=s findings of fact.  Officer Miller testified that he pulled
Appellant over because he saw her commit a traffic violation.  But he was mistaken.  What he observed was not a violation of the
law.  As this court has previously
explained, reasonable suspicion of an alleged traffic violation cannot be based
on a police officer=s mistaken understanding of traffic
laws.[5]








As the Foster court posited, AIn the absence of a traffic offense,
was there reasonable suspicion of intoxication?@[6] 
A reviewing court must determine whether Athe combined weight of [the] circumstances is . . . so much
greater than the aggregation of their individual weights that it allows for a
rational inference of intoxication.@[7] 
The majority points out that the trial court found no traffic violation,
no unsafe driving, very light traffic, and no erratic speed changes.[8]

The majority then properly addresses
the remaining justifications for the detention. 

1. 
Time of night.  ATime of day, by itself, is >owed virtually no weight= as a factor in determining reasonable suspicion.@[9]

2. 
Leaving a bar area.  Actually, Officer Miller did not
see Appellant leaving a bar area but, rather, driving on a freeway/major state
highway that was routed through an area that had some bars and
restaurants.  He did not observe her
leaving any parking lot or even driving on a roadway other than Highway 183
with limited ingress and egress.  He did
not observe her at any point before she was driving on Highway 183.  As the Foster court stated, A[L]ocation is generally >an insufficient basis for a rational
inference that would lead to a reasonable suspicion.=@[10]








3.  Crossing on
to the shoulder of the roadway, once by one-half the width of the vehicle and a
second time by a few inches and A[u]nusual use of turn signal.@

The trial court correctly concluded
that the record reveals that Appellant committed no traffic offense.[11]  Was the use of the turn indicator, combined
with the other circumstances, sufficient to provide reasonable suspicion to
detain Appellant? Officer Miller suggested that he thought that Appellant=s signal was a violation of the law.

Section 545.104(b) of the
transportation code provides in pertinent part that A[a]n operator intending to turn a
vehicle right or left shall signal continuously for not less than the last 100
feet of movement of the vehicle before the turn.@[12] 
The statute does not provide for a maximum distance beyond which a
person may not signal a turn, only a minimum distance.  Officer Miller did not see Appellant violate
the law by engaging her turn indicator more than 100 feet before changing lanes
or exiting the freeway.

An officer=s
reasonable suspicion of an alleged traffic violation cannot be based on a
mistaken understanding of traffic laws. 
And an officer=s honest but mistaken understanding of the traffic law
which prompted a stop is not an exception to the reasonable suspicion requirement.[13]








The issue, then, is whether the non-violation was a
circumstance providing, in light of all the circumstances, reasonable suspicion
for Officer Miller to stop Appellant. 
This question requires close examination of the videotape.

The videotape shows that when
Appellant first engaged her turn signal, there was a traffic lane to her right
and a sign indicating the Harwood exit from the freeway.  After she engaged the turn indicator, it
became clear that the lane to her right merged into the lane she was in.  At this point she had a choice to make.  She could disengage the turn indicator, and
then immediately re-engage it in order to signal her intent to exit the
freeway, or she could leave the turn indicator on.  Was one choice really so much more rational
than the other that to make the other choice indicated intoxication?  Was her decision not to flick the indicator
off and then immediately on even unreasonable?

The detention cannot be justified by
the fruits of the detention.  The reasonable
suspicion for the stop must exist at the time the officer exercises a show of
authority and the suspect indicates an intent to or actually acquiesces to the
show of authority.[14]  Officer Miller engaged his overhead lights
before Appellant exited the freeway.








I would hold that the combined
circumstances of Officer Miller=s seeing Appellant=s vehicle traveling at 12:25 a.m. on
a limited ingress/egress major highway through an area containing bars and
restaurants, seeing the vehicle=s tires crossing or touching the
right lane line twice, and seeing Appellant indicating her exit from the
freeway for more than 100 feet do not provide reasonable suspicion to believe
that Appellant was committing the offense of DWI.  I would hold, therefore, that the State did
not sustain its burden of proving that the warrantless stop was lawful, and I
would further hold that the trial court abused its discretion by denying
Appellant=s motion to suppress the fruits of
the stop.  Because the majority does not,
I must respectfully dissent.

 

LEE
ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED: March 11, 2010











[1]The State also introduced the videotape of the stop
made from the camera in Officer Miller=s patrol unit.





[2]Officer Miller testified that the vehicle was driving westbound.  A review of the videotape, however, shows
that the vehicle was actually traveling eastbound.  Because this is irrelevant to the issue at
hand, we note it simply for the sake of accuracy.





[3]When, as in this case, the appellant has not
separately briefed state and federal constitutional claims, we assume that the
appellant claims no greater protection under the state constitution than that
provided by the federal constitution.  See
Varnes v. State, 63 S.W.3d 824, 829 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Therefore,
we will analyze Reed=s claim solely under the Fourth Amendment of the
United States Constitution, following guidelines set by the United States
Supreme Court in interpreting the Fourth Amendment.  See State v. Guzman, 959 S.W.2d 631,
633 (Tex. Crim. App. 1998).





[4]Because a routine traffic stop typically involves only
a short, investigative detention, as opposed to a custodial arrest, we analyze
traffic stops under the principles developed for investigative detentions set
forth in Terry v. Ohio. 
392 U.S. at 22, 88 S. Ct. at 1880; see Berkemer v. McCarty, 468
U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984); Martinez v. State, 236
S.W.3d 361, 369 (Tex. App.CFort Worth 2007, no pet.).





[1]Majority op. at 3.





[2]Id.





[3]297 S.W.3d 386 (Tex. App.CAustin
2009, pet. granted).





[4]Id. at 393
(citing Curtis v. State, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007)).





[5]Fowler v. State,
266 S.W.3d 498, 504 (Tex. App.CFort Worth 2008, pet. ref=d); see
United States v. Granado, 302 F.3d 421, 423 (5th Cir. 2002).





[6]297 S.W.3d at 393.





[7]Id. (citing State
v. Thirty Thousand Six Hundred Sixty Dollars & No/100, 136 S.W.3d 392,
400 (Tex. App.CCorpus Christi 2004, pet. denied)).





[8]Majority op. at 4.





[9]Foster, 297
S.W.3d at 393 (quoting Thirty Thousand Six Hundred Sixty Dollars &
No/100, 136 S.W.3d at 400).





[10]Id. (quoting
Thirty Thousand Six Hundred Sixty Dollars & No/100, 136 S.W.3d at
401).





[11]See Fowler,
266 S.W.3d at 504B05; State v. Huddleston, 164 S.W.3d 711, 716
(Tex. App.CAustin 2005, no pet.).





[12]Tex. Transp. Code Ann. ' 545.104(b) (Vernon 1999).





[13]Fowler, 266
S.W.3d at 504 (citations omitted).





[14]St. George v. State, 237 S.W.3d 720, 725B26 (Tex. Crim. App. 2007) (citing Terry v. Ohio,
392 U.S. 1, 19B20, 88 S. Ct. 1868, 1878B79 (1968)).