

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0001-10

**RYAN FOSTER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, KEASLER, HOLCOMB and COCHRAN, JJ., joined. JOHNSON, J., concurred.

### O P I N I O N

Appellant was charged with a Class B misdemeanor of driving while intoxicated (DWI).

Following the trial court's denial of appellant's motion to suppress, appellant pled nolo contendere,

pursuant to a plea agreement, and was placed on community supervision for eighteen months.

Appellant appealed the trial court's ruling on his motion to suppress, and the court of appeals

decided that reasonable suspicion of intoxication did not exist when the police detained appellant

to investigate whether he was intoxicated. *Foster v. State,* 297 S.W.3d 386, 390-94 (Tex. App – Austin 2009) ("reasonable suspicion did not exist to justify Foster's detention for DWI"). We will reverse.

The suppression-hearing record reflects that on September 13, 2007, at approximately 1:30 a.m., Austin Police Department Homicide Detective Kurt Thomas was stopped at a red light in the right lane of a two-lane one-way street in an unmarked police car a few blocks from Austin's Sixth Street bar district. Appellant's truck came up extremely close behind Thomas's vehicle, which Thomas appeared to describe as a lurch. Thomas testified that he heard a revving sound and noticed appellant's truck lurch forward again. Thomas believed that appellant was attempting to get into the left lane, but appellant was so close to the police car that he did not have enough room to enter the left lane.[1] Sergeant Eric de los Santos, driving a marked police car, pulled alongside Thomas and Foster, which "effectively prevented appellant from moving." *See Foster,* 297 S.W.3d at 389.

---

[1]

Thomas explained Foster's lurches:

Q. [DEFENSE ATTORNEY]: Now, in your offense report, you indicated that he pulled up initially extremely close to your vehicle. Right?

A. [THOMAS]: That is correct.

Q. Then you noticed you heard a revving sound from his engine; is that correct?

A. Yes, sir. He – there was a revving sound and then there was another lurch forward.

Q. When he lurched forward, based on what you saw, you believe he tried to turn in to the next lane?

A. When he initially lurched, he lurched right behind me. It was the second time, I believe, that he was trying to get to the lane to the left of me.

Thomas testified that he decided to "detain" appellant because he thought appellant's driving was "unsafe and–due to where [they] were downtown and the time of night, [he] was concerned that maybe this driver was impaired."[2] The officers exited their vehicles and approached appellant's vehicle. The officers smelled alcohol as they approached appellant's vehicle, and appellant was

---

[2] Thomas also testified that he thought that appellant had committed a Traffic-Code violation of "unsafe start from stop position," which he was not able to find in the "Traffic" or "City" Code. The court of appeals decided that the police lacked reasonable suspicion to detain appellant for any Traffic-Code violations, and we did not grant discretionary review to review this decision. *See Foster*, 297 S.W.3d at 392-93. Thomas testified:

Q. When he made this movement–and you have termed it "unsafe start from stop position;" is that correct?

A. Correct.

Q. By the way, what is your basis for that traffic violation? Was it found in the Traffic Code? City Code?

A. After this has [sic] happened, after looking for that specific title, I have not been able to find it.

Q. Okay. Nevertheless, you decided to detain Mr. Foster?

A. Yes, sir.

Q. Based on the traffic violation?

A. Based on what was occurring prior to my contact with him.

Q. Okay. And that is the lurching of the vehicle? Coming extremely close, trying to get by you? Those weird vehicle movements?

A. Well, I believed what was occurring behind me was unsafe, and I was concerned that–due to where we were at downtown and the time of night, I was concerned that maybe this driver was impaired. You know, that was one thing I was thinking of at that time.

"removed" from his vehicle.[3]  Appellant was arrested for DWI after "a responding DWI enforcement officer conducted field sobriety tests."  *See Foster*, 297 S.W.3d at 299.

Thomas testified that, before becoming a homicide detective, he worked traffic patrol and had been part of DWI arrests.  He also testified that, based on his training and experience in traffic patrol, it is common for many people to be impaired in Austin's Sixth Street bar district late at night.[4]

---

[3]

 The State claims that this is when appellant was detained.  In its brief in the court of appeals, the State argued:

> The reporter's record shows that Detective Thomas "decided to detain" the driver because he thought the truck's erratic movements and proximity to his own car were unsafe.  Thomas was also concerned that the driver was impaired "due to where we were at downtown and the time of night."
>
> Was Foster detained when Thomas decided to detain him, as the defense implies? No, because the reasonableness test is objective.  An officer's secret ambition to detain therefore cannot be dispositive.  Moreover, nothing in the record up to that point speaks to any show of police authority or restraint on Foster's freedom to drive away.  Instead, the record shows that, after Thomas observed the erratic driving behavior, he and Officer de [sic] los Santos approached Foster's truck, which was already at a standstill of its own accord.  Both officers detected a strong odor of alcoholic beverages about the driver.  Thomas testified that Foster was then "removed from the vehicle."  It is reasonable to infer from this that Foster was detained when he got out of his truck so that police could investigate intoxication.

(Citations to record and authority omitted).

[4]

Thomas described his police department experience:

Q. [STATE]: What were your duties before homicide detective?

A. [THOMAS]: Before I was a detective, I was a police officer.

Q. Did you ever work patrol or traffic?

A. Yes, I did.

The trial court made express findings that Thomas's testimony was credible and that he had reasonable suspicion to detain appellant for DWI in light of the time of night, the location near Austin's downtown bar district, and appellant's erratic driving– the "lurching" movements described in Thomas's testimony.[5] The State made no claim at the suppression hearing that appellant was not

---

Q. Have you had occasion to arrest or cite people for moving violations?

A. Yes.

Q. And have you ever been part of a DWI arrest or arrested anyone for DWI?

A. Yes.

Q. And have you ever been on patrol in this 6th Street area?

A. Yes, I have.

Q. So I will ask you again: Based on the training and experience you had, was it common for people when driving in this area of 6th Street -- that area of downtown late at night, is it common for many people to be impaired?

A. Yes.

Q. So would you say when you see someone indicating some erratic or unsafe driving in this part of town that it might be a natural inclination for someone to suspect that person of being impaired or intoxicated?

A. Yes.

[5]

The trial court found:

Okay, Well, it is my -- to sum this up, I find the officer's testimony credible. I find that his testimony which indicated erratic movements of the defendant's car, including a lurch up to a distance within inches of the officer's car, although he was -- the officer was stopped at a red light; these movements occurring on 6th Street -- in the 6th Street area; probably this location being only a few blocks from the party district of 6th Street and occurring at 1:30 in the morning is sufficient evidence to justify the stop of this vehicle. I believe all of those factors together -- maybe not if this happened in a neighborhood at 2:30 on Sunday afternoon, but the location and the time I think are factors that create a reasonable suspicion of DWI.

detained before the police approached his vehicle and smelled alcohol, and the trial court made no findings on exactly when appellant was detained by the police.[6]

The court of appeals decided that appellant "was detained at the time the police officers blocked his vehicle, preventing him from leaving the scene, and began to approach." *See Foster*, 297 S.W.3d at 391. The court of appeals also decided that reasonable suspicion did not exist to justify appellant's detention for DWI. *Foster*, 297 S.W.3d at 394. The court of appeals acknowledged that this Court no longer employs the "as consistent with innocent activity as with criminal activity" test for reasonable suspicion. *Foster*, 297 S.W.3d at 393. Nevertheless, the court of appeals decided that "the plausibility of an innocent explanation [for the lurching movements] in this case affects [the] determination of whether there was a reasonable basis for suspecting that Foster was intoxicated." *Id.* The court of appeals also decided that the time of night and location, standing alone and in combination with the lurching movements, were insufficient to support a reasonable suspicion of intoxication. *Id.* ("Intoxication cannot be inferred from the lurching movements alone, and while the lurching movements may be more suggestive of intoxication when combined with the location and time of night, the combined weight of these circumstances is not so much greater than the aggregation of their individual weights that it allows for a rational inference of intoxication."). We granted the State's discretionary-review petition on two grounds which present the following issues:

1. Whether the Third Court erred in applying the "as consistent with innocence as

---

[6]

*See also Foster*, 297 S.W.3d at 390 n.2 ("At the suppression hearing, the State did not contend that the detention occurred only after Thomas and De Los Santos detected the odor of alcoholic beverages, nor did it argue that the detention was justified by any traffic violations. Instead, the State took the position that Thomas had reasonable suspicion to detain Foster based on his unsafe and erratic driving, combined with the lateness of the hour and the proximity of the Sixth Street bar district.").

with criminal activity" standard in analyzing the totality of the circumstances and determining whether the officers had reasonable suspicion to detain.[7]

2. Whether the Third Court failed to give appropriate deference to the trial court's implied factual findings when it held that Foster was detained "when he found himself barricaded on the front and side by two vehicles, one of which was a marked police car."[8]

A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1 (1968). In order to stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 21. Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id*. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods,* 956 S.W.2d at 38.

The court of appeals cited to this Court's decision in *Curtis* in support of its decision that "the plausibility of an innocent explanation affects [the] determination of whether there was a

---

[7]  *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (holding that the "as consistent with innocent activity as with criminal activity" construct is no longer a viable test for determining reasonable suspicion).

[8]  Our disposition of the first ground for review makes it unnecessary to address the second ground for review. We will, therefore, presume that appellant was detained "when he found himself barricaded on the front and side by two vehicles, one of which was a marked police car." We nevertheless question the court of appeals's opinion to the extent that it suggests that a person is "detained" by the police simply because that person is in a vehicle behind an unmarked police car and alongside a marked police car at a traffic light. We express no opinion on whether appellant was "detained" when the officers exited their vehicles and began to approach appellant's vehicle before they smelled alcohol.

reasonable basis for suspecting that appellant was intoxicated." *See Foster*, 297 S.W.3d at 393 (citing *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007)). However, this is contrary to this Court's opinion in *Curtis,* which reiterated our previous rejection of this standard. *See Curtis*, 238 S.W.3d at 378 (court of appeals's decision that there could have been a number of "non-intoxicated-related reasons" for the driver's weaving was an application of the rejected "as consistent with innocent activity as with criminal activity" standard").[9]

Our decision in *Curtis* also supports a decision that time of day is a relevant factor in determining reasonable suspicion. *See Curtis,* 238 S.W.3d at 380-81 (officers' testimony that they saw defendant's car weaving in and out of his lane several times over a short distance late night rationally supported an inference that the driver could be intoxicated). Similarly, we believe that location near a bar district where police have made numerous DWI arrests is also a relevant factor in determining reasonable suspicion.[10]

Keeping in mind that the Fourth Amendment totality-of-the-circumstances test requires only "some minimal level of objective justification" for the stop in this case,[11] we hold there was

[9]

Our decision in *Woods* fully explains why this Court rejected the "as consistent with innocent activity as with criminal activity" construct for determining reasonable suspicion for a temporary detention.

[10]

We note that the trial judge explained that her conclusion might have been different had "this happened in a neighborhood at 2:30 on Sunday afternoon." Time and location are relevant and appropriate considerations when doing a totality of the circumstances review to determine whether or not reasonable suspicion exists.

[11]

*See United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We

reasonable suspicion for the police to have believed that appellant may have been intoxicated. In light of the time of night, the location, Thomas's training and experience, and Foster's aggressive driving, it was rational for Thomas to have inferred that appellant may have been intoxicated, thus justifying a temporary detention for further investigation. *See Curtis*, 238 S.W.3d at 381 ("The officers testified that they observed appellant's car weaving in and out of his lane several times, over a short distance, late at night. A 'rational inference' from these facts could be that the driver was intoxicated. When viewed in light of the training officer's extensive experience in detecting intoxicated drivers, coupled with both officers' training to use the driver's weaving specifically as an indicator of intoxicated driving, the trial court could have reasonably concluded that the articulated facts gave rise to enough suspicion to justify at least an investigation."). Thomas articulated "something more than an inchoate and unparticularized suspicion or hunch" that objectively justified appellant's detention. *See Sokolow*, 490 U.S. at 7 (internal quotes omitted). We find the trial court's ruling to be supported by the record and the law. *See id.*[12]

---

have held that probable cause means a fair probability that contraband or evidence of a crime will be found, and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.") (Internal quotes and citation to authorities omitted).

[12] We note that the court of appeals relied on its decision in *State v. Guzman* in which it declined "to hold that an officer may lawfully detain on suspicion of intoxication any driver who is seen by the officer to spin a tire at a downtown intersection at night." *See Foster*, 297 S.W.3d at 393-94 (finding that Foster's case is similar to the facts in *State v. Guzman*, 240 S.W.3d 362, 365, 368 (Tex.App.–Austin 2007, pet. ref'd)). We find *Guzman* to be factually distinguishable from this case while also recognizing that each case must be resolved on the totality of its own facts. In *Guzman*, an officer detained the intoxicated defendant at approximately 11:50 p.m. after observing a tire on the defendant's pickup truck spin for a few seconds when the defendant's truck began to accelerate at a stoplight. *See Guzman*, 240 S.W.3d at 365-67. The officer stopped and detained Guzman, because the officer thought that Guzman had committed a Transportation-Code traffic offense ("exhibiting acceleration") and not because, as in this case, the officer thought that Guzman was driving unsafely and might be intoxicated. *See id*. The principal issue in *Guzman* was whether Guzman committed the Transportation-Code offense for which he was detained. *See id*. The court

The judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.

Hervey, J.

Delivered: December 8, 2010
Publish

---

of appeals decided that Guzman did not commit this or any other Transportation-Code offense. *See id*. More important, the court of appeals in *Guzman*, as it did in this case, applied the discredited "as consistent with innocent activity as with criminal activity" construct when it stated that there were "innocent reasons why a tire may lose traction and spin upon acceleration from a stop." *See Guzman*, 240 S.W.3d at 368.