**Gene Kirk SCOTT, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 06–95–00101–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 20, 1995.

Decided Dec. 20, 1995.

John Hagler, Dallas, for appellant.

April E. Smith, Assistant District Attorney, Dallas, Sue Korioth, Assistant District Attorney, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

In a nonjury trial, Gene Kirk Scott was convicted of driving while intoxicated and sentenced to 120 days' confinement in jail, probated, and a $300.00 fine. Scott appeals, contending that the evidence is legally and factually insufficient to support his conviction. We affirm the conviction.

■ In reviewing the legal sufficiency of the evidence, we view it in the light most favorable to the verdict and determine whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

(1979); *Turner v. State*, 805 S.W.2d 423 (Tex. Crim.App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). In reviewing the factual sufficiency of the evidence, as the Texas Constitution both permits and requires us to do when it is raised on appeal, we consider all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). We generally defer, however, to the trier of fact's determination of the credibility of the witnesses and the weight to be given their testimony, and to its resolution of conflicts in the evidence.

■ The State's evidence in this case was given by the arresting officer, Charles Marsh. He testified that he was patrolling on Stemmons Freeway in Dallas on February 14, 1994, at about 11:45 p.m., when he observed an automobile driven by Scott swerve back and forth three or four times, straddling the centerline of its lane of traffic. He pulled the car over to investigate the offense of failure to maintain a single lane. He asked Scott if he had been drinking, and Scott said he had "two or three." The officer testified that Scott's eyes were red, he smelled of alcohol, there was a slight slur in his speech, and he was unsteady on his feet. Marsh said he had Scott perform a straight-line test, and that Scott lost his balance and "fell off to the side" two or three times. Marsh gave Scott no other test, but took him to the police station. While Scott was there, a videotape was taken of him and he was asked to take an intoxilyzer test, but he refused.

The defense evidence consisted of testimony by Patricia McMillian, Scott's own testimony, and cross-examination of Officer Marsh that revealed some discrepancies in his testimony about weather conditions at the time of the arrest and the distance that he followed Scott.

McMillian testified that she was a fellow worker of Scott's at the J.C. Penney Company and that on the evening of the offense, she went with Scott and several other Penney employees to an art show. She said that

while they were there she had a half glass of wine and that she saw Scott have one glass of wine, although she said she did not watch Scott all the time they were there and that it was possible that he could have had more to drink that she did not know about. She said she left the art exhibit at about 11:30 p.m., before Scott left. She opined that Scott was definitely not intoxicated when she last saw him.

Scott testified for himself. He said he had only one glass of wine at the art show and that he left the art show shortly after his friends had left. He said he had nothing else to drink after he left the party. He admitted that in the videotaped interview he said he had one and a half drinks. He testified that he did not straddle the line while driving on the freeway and that he definitely was not intoxicated. He maintained that he passed the straight-line test and a "pen test" that Officer Marsh gave him, and that another officer gave him a "pen test" at the police station, who after doing so told him to "fight" the DWI charge.

From the foregoing recitation, it is obvious that there is sufficient evidence that, if believed by the fact finder, would justify a finding of guilt. The decision of what evidence to believe is in the peculiar province of the fact finder. There were some inconsistencies in Officer Marsh's testimony, but they pertained to weather conditions and the distance he followed Scott on the night in question. Marsh testified that he had made hundreds of DWI arrests and that he was certain that Scott was intoxicated on the night in question. His testimony as to intoxication was entirely consistent. In addition, the court had before it the videotape of Scott, and there were some inconsistencies in the testimony of the defense witnesses. Although the videotape appears to largely favor Scott's position, he did make a statement on it that was inconsistent with his trial testimony, and the tape was made about an hour and thirty-five minutes after Scott's arrest. Moreover, Scott's refusal to take an intoxilyzer test may be considered by the fact finder as evidence that he was intoxicated. *Bright v. State*, 865 S.W.2d 135 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Finley v. State*, 809 S.W.2d 909 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

All in all, this case presents a classic example of the fact finder's prerogative to weigh the evidence, assess credibility, and resolve conflicts in the evidence to make a decision. We cannot say that the evidence here is insufficient to support the trial court's decision.

For the reasons stated, the judgment of the trial court is affirmed.