Opinion issued December 9, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00560-CR

———————————

Keith Gregory Peltier, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 23rd District Court

Brazoria County, Texas



Trial Court Case No. 57357

 



 

MEMORANDUM OPINION

A jury
convicted appellant, Keith Gregory Peltier, of the enhanced offense of operating
a motor vehicle in a public place while intoxicated with two previous
convictions for that offense.  See Tex.
Penal Code Ann. §§ 49.04(a),
49.09(b)(2) (Vernon 2003 & Supp. 2010).  After
finding true the allegations in the enhancement paragraphs that Peltier had two
previous convictions for felony offenses, the jury assessed punishment at
seventy‑five years’ confinement.  See Act of May 15, 2007, 80th Leg., R.S.
ch. 340, § 4, 2007 Tex. Gen. Laws 627, 628
(former Tex. Penal Code § 12.42(d), since amended).  Peltier presents two issues on appeal,
complaining that the trial court erred by denying his motion to suppress
evidence and that the evidence was factually insufficient to support his
conviction.  We affirm.

Background

          Department
of Public Safety Trooper J. Johnson testified that he was purchasing gasoline around
5:00 p.m. when he observed an individual he later identified as Peltier driving
a vehicle and leaving the service station. 
Johnson’s attention was drawn to the vehicle because Peltier stopped the
vehicle and got out, leaving the driver’s door open.  Peltier then approached another man and began
a conversation.  Johnson found the
situation unusual because the men were staring at him and Peltier returned to
his vehicle on more than two occasions seemingly to retrieve something, but he returned
empty‑handed each time.

Peltier eventually drove out of the
parking lot onto a street, but he then circled back to the service station
parking lot.  Peltier drove past Johnson
to a section of the parking lot out of the trooper’s view.  Johnson next saw Peltier walking into the
service station’s store, and he described Peltier as stumbling and staggering.  Johnson followed Peltier into the store, said
that he saw him stumble, and asked if he was okay.  Peltier responded that he was fine and was
not on any medication.  Johnson testified
that he smelled alcohol on Peltier’s breath when he responded to questions.

Johnson then asked Peltier to step
outside the store and asked when he had last consumed alcohol.  Peltier said that he had consumed an
alcoholic beverage first thing that morning. 
Johnson then conducted a horizontal­‑gaze‑nystagmus test.  Johnson testified that he detected nystagmus
and that Peltier had difficulty following his instructions.  On cross‑examination, Johnson stated
that he did not perform the horizontal‑gaze‑nystagmus test according
to the specific standards set out by the National Highway Traffic Safety
Administration (NHTSA), as he apparently performed 11 passes instead of 14.

          Johnson
then asked Peltier to get into his patrol car, and he drove to another part of
the parking lot to conduct field‑sobriety tests.  Johnson administered a walk‑and‑turn
test, and Peltier was unable to complete the test, both failing to count to
nine while walking and failing to walk in a straight line.  Johnson did not administer the walk‑and‑turn
test because he was concerned that Peltier might fall.  For the same reason, he did not ask Peltier
to perform the one‑leg stand. 
Johnson admitted that people who, like Peltier, are more than fifty
pounds overweight may have trouble with the walk‑and‑turn test, but
he also took into consideration “that he was kind of incoherent, lethargic, . .
. his clothes were wrinkled, his zipper was unzipped,” as well as the odor of
alcohol.  Johnson also asked Peltier to recite
the alphabet, which he was unable to do. 
Johnson stated at trial that the alphabet test is not a standard field‑sobriety
test recognized by NHTSA.

After administering these tests,
Johnson concluded that Peltier was intoxicated and arrested him.  Johnson read Peltier the statutory warnings
before requesting a breath sample, to which Peltier replied, “Hell, no.”  The field sobriety test and Peltier’s arrest
were recorded on video and later played for the jury.

After being arrested, Peltier mentioned
to Johnson that he had diabetes.  Johnson
admitted that he had experience with diabetics and that their diabetes may
affect the field‑sobriety tests. 
Nonetheless, it was Johnson’s opinion that Peltier was intoxicated,
because Johnson did not see Peltier take any medicine or insulin, or drink
anything like orange juice, yet Peltier became progressively more alert.  Peltier’s condition was contrary to Johnson’s
experience with diabetics, which is that they get progressively worse without
treatment.

At trial, Peltier presented only
one defense witness, his father, who came to the service station to retrieve
his son’s vehicle after he was informed of his son’s arrest.  The father testified that he did not smell
alcohol on his son’s breath, though he never got close to him, and that his son
“looked all right to me.”  He also stated
that his son has Type II diabetes, takes insulin in the morning and the evening,
and appeared to have normal mental and physical faculties on the morning of the
arrest.

Peltier
moved to suppress evidence of the arrest and the contents of the
videotape.  At a pretrial suppression
hearing, he argued that evidence pertaining to the arrest should be suppressed
because the arrest was illegal. 
Peltier’s counsel contended that Johnson’s testimony provided no basis
for reasonable suspicion or probable cause to initiate the temporary detention
prior to conducting field‑sobriety tests.  The trial court denied the motion to suppress.  Peltier was convicted and this appeal ensued.

Discussion

I.                 
Motion to suppress

In his
first issue, Peltier contends that the trial court abused its discretion in
denying his pretrial motion to suppress the videorecording of the field‑sobriety
tests and arrest.  Peltier argues that
the motion should have been granted because Johnson did not have reasonable
suspicion to detain him, and therefore the subsequent arrest was unlawful.

a.     Standard of review

A trial court’s ruling on a motion
to suppress is reviewed by an abuse‑of‑discretion standard.  Balentine
v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).  In
reviewing a trial court’s ruling on a motion to suppress evidence and its
determination of the reasonableness of either a temporary investigative
detention or an arrest, the appellate court uses a bifurcated standard of
review.  Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  We must give “almost total deference to a
trial court’s determination of the historical facts that the record supports especially
when the trial court’s fact findings are based on an evaluation of credibility
and demeanor.”  Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  This
“deferential standard of review in Guzman applies to a trial court’s determination of historical facts when
that determination is based on a videotape recording admitted into evidence at
a suppression hearing.”  Montanez
v. State,
195 S.W.3d 101, 109 (Tex. Crim. App. 2006).

We also
afford the same level of deference to a trial court’s ruling on “application of
law to fact questions,” or “mixed questions of law and fact,” if the resolution
of those questions turns on an evaluation of credibility and demeanor.  Id.
at 106 (citing Guzman, 955 S.W.2d at 89).  We review de novo “mixed questions of law and fact” that do not depend
upon credibility and demeanor.  Montanez, 195 S.W.3d at 106 (citing Guzman, 955 S.W.2d at 89).  A trial
court’s assessment of when a detainment takes place is a mixed question of law
and fact that does not depend upon credibility and demeanor.  Hunter v. State,
955 S.W.2d 102, 105 n.4 (Tex. Crim. App. 1997).  Therefore, we review this question de novo.  Id.

b.    Reasonable suspicion

When a police officer has stopped a
defendant without a warrant and without the defendant’s consent, the State has
the burden at a suppression hearing of proving the officer had reasonable
suspicion to believe the individual was violating the law.  Castro v. State, 227
S.W.3d 737, 741 (Tex. Crim. App. 2007); Amador, 221 S.W.3d at 672–73; Russell v.
State, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986).  An officer can stop and briefly detain a
person for investigative purposes if the officer has a reasonable suspicion
supported by articulable facts that criminal activity may be afoot, even if the
officer lacks evidence rising to the level of probable cause.  Ornelas
v. United States, 517 U.S. 690, 693, 116 S. Ct. 1657, 1660 (1996); Terry
v. Ohio, 392 U.S. 1, 27–30, 88 S. Ct. 1868, 1883–84 (1968); Castro, 227 S.W.3d at 741; Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Woods v. State, 956 S.W.2d 33, 35 (Tex. Crim. App.
1997); Citizen v. State,
39 S.W.3d 367, 370 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  This standard is an
objective one.  There need only be an
objective basis for the stop; the subjective intent of the officer conducting
the stop is irrelevant.  Garcia, 43 S.W.3d at 530.  The reasonable‑suspicion determination
is made by considering the totality of the circumstances.  Id.

                                                            
i.     
Questioning within the store

Peltier argues that the trial court
abused its discretion by denying his motion to suppress the videorecording as
evidence because it resulted from an unlawful detention.  Peltier contends that Johnson’s persistent
questioning of him within the store constituted a detention and that the State
produced insufficient facts to support a reasonable suspicion for the detention.

We first determine de novo when Johnson
detained Peltier.  See Hunter,
955 S.W.2d at 105 n.4.  Peltier
contends that he was detained in the service station’s store after Johnson
approached him and asked him if he was okay.  Peltier responded he was not sick, and Johnson
then said that he saw him stumble and asked if he was on any medication.  We conclude that Johnson’s questioning of Peltier
in the store did not constitute a detention. 
“A police officer’s asking questions . . . do[es]
not alone render an encounter a detention. 
Only if the officer conveyed a message that compliance was required
has a consensual encounter become a detention.” 
Hunter, 955 S.W.2d at 106 (emphasis in original).  Nothing in the record indicates that Peltier was
required to answer the questions nor did Peltier produce any evidence at trial
to suggest that his answers were nonconsensual. 
See Johnson v. State, 912 S.W.2d
227, 235 (Tex. Crim. App. 1995) (“[E]ncounters are consensual so
long as a reasonable person would feel free ‘to disregard the police and go
about his business.’” (quoting California
v. Hodari D., 499 U.S. 621, 628, 111 S. Ct. 1547, 1552 (1991)).  Thus, we conclude that Johnson detained
Peltier when he asked him to step outside the service station’s store.

                                                          
ii.     
Detention outside the store

When considering whether Johnson
had reasonable suspicion to detain Peltier, we must examine the totality of the
circumstances.  Garcia, 43 S.W.3d at 530.  Peltier relies upon Foster v. State, 297 S.W.3d 386
(Tex. App.—Austin 2009, pet. granted), to support his claim that the cumulative
facts presented by the State were not sufficient to support a reasonable
suspicion to detain him.  In Foster, officers detained a
driver after observing his truck make lurching motions.  Id.
at 389.  Because “the
lurching movements were not unreasonably dangerous, reckless, or even
inexplicable,” the court held that, without other facts, the
detaining officers could not have reasonably concluded that the defendant was
driving while intoxicated.  Id. at 393.

Unlike Foster, in which the lurching of the
defendant’s car was the only articulable fact presented to support a reasonable
suspicion of driving while intoxicated, the State produced multiple articulable
facts to support Johnson’s reasonable suspicion that Peltier had been driving
while intoxicated.  Johnson testified
that he observed Peltier driving, he saw Peltier stumbling in the parking lot,
and he smelled alcohol on Peltier’s breath when they conversed in the store.  When combined with rational inferences, these
facts could reasonably have led Johnson to suspect that Peltier had been
driving while intoxicated.  Giving the
deference we must to the trial court’s determination of the historical facts,
we conclude Johnson had reasonable suspicion to detain Peltier for further
questioning.  See Guzman
v. State, 955 S.W.2d
at 89.

We hold that the State met its burden at the suppression
hearing of proving that Trooper Johnson had reasonable suspicion to believe
that Peltier was violating the law.  See Castro, 227
S.W.3d at 741.  Accordingly, we overrule Peltier’s first issue.

II.              
Factual sufficiency of the evidence

In his second issue, Peltier contends
the evidence is factually insufficient to show that he was intoxicated.

a.     Standard of review

Due process requires a court reviewing
the sufficiency of evidence to support a criminal conviction to determine
“whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.” 
Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979).  Our
state-law standard for reviewing the factual sufficiency of the evidence
mirrors the standard required by the United States Constitution.  See
Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at *14 (plurality op.),
*22 (Cochran, J., concurring) (Tex. Crim. App. Oct. 6, 2010).

b.    Analysis

The indictment alleged that Peltier committed the enhanced offense of operating a motor
vehicle in a public place while intoxicated with two previous convictions for
that offense.  See Tex. Penal Code Ann. §§ 49.04(a), 49.09(b)(2) (Vernon 2003 & Supp.
2010).  Accordingly, the State had to prove that Peltier was
intoxicated while operating a motor vehicle in a public place.  See
Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).  “Intoxicated” is defined as “not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol . . . into the body.” 
Tex. Penal Code Ann. § 49.01(2)(A) (Vernon 2003).

Peltier does not dispute that he operated a motor vehicle in
a public place.  His argument on appeal focuses
on the fact that Johnson did not specifically testify that he lacked the normal
use of his mental or physical faculties. 
To further support his claim that the evidence presented by the State
was factually insufficient to support his conviction, Peltier also relies upon
the following: Johnson observed Peltier drive and converse with another person without
any specific indication of intoxication, Johnson did not perform the horizontal‑gaze‑nystagmus test according
to the specific NHTSA standards, Johnson did not consider Peltier’s diabetes
as a factor that could have affected his ability to properly conduct the field‑sobriety
tests, and Petlier’s father testified that he did not smell alcohol on his son’s breath and that his son “looked all
right.”

While the record does reflect that
Johnson did not specifically
testify that Peltier did not have the normal use of his mental or physical faculties,
Johnson did testify that Peltier was intoxicated due to the introduction of
alcohol.  The testimony of a law‑enforcement
officer that an individual is intoxicated is probative evidence of
intoxication.  Henderson v. State, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d) (citing Gruber
v. State, 812 S.W.2d 368, 370 (Tex. App.—Corpus Christi 1991, pet. ref’d).  There is no requirement that the State elicit
specific testimony that a defendant “did not have the normal use of his [or
her] mental or physical faculties” in order to prove intoxication.  See
Rodriguez v. State, 31 S.W.3d 359,
361 (Tex. App.—San Antonio 2000, pet. ref’d) (rejecting similar argument and
allowing proof of intoxication based on officer’s statement defendant was
intoxicated based on field‑sobriety tests).

The jury, in its fact-finding role, heard testimony from
Johnson that he observed Peltier
stumble in the store and smelled alcohol on his breath, that he failed
the field‑sobriety tests, and that he was observed to be “kind of incoherent, lethargic . . . his
clothes were wrinkled, [and] his zipper was unzipped.”  The jury viewed the video of the field­‑sobriety
tests.  The jury also heard testimony that Peltier refused to offer a breath sample,
which may be considered by the fact‑finder as evidence of
intoxication.  See Scott v. State,
914 S.W.2d 628, 630 (Tex. App.—Texarkana 1995, no pet.) (citing Finley v. State, 809 S.W.2d 909, 913
(Tex. App.—Houston [14th Dist.] 1991, pet. ref’d); see also Tex. Transp. Code
Ann. §
724.061 (Vernon 1999) (“A person’s refusal of a request by an officer to submit
to the taking of a specimen of breath or blood, whether the refusal was express
or the result of an intentional failure to give the specimen, may be introduced
into evidence at the person’s trial.”).  Finally, Johnson testified that he did not
see Peltier take any medicine or insulin, or drink anything like orange juice,
yet Peltier became progressively more alert rather than worse, contrary to how
a person with diabetes typically would react.

While Peltier’s counsel vigorously cross‑examined Johnson on his
testimony, including the administration of field‑sobriety tests, we cannot say that no rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt, including that Peltier lacked the normal use of his mental or
physical faculties by reason of the introduction of alcohol into his body.  Considering all of the evidence in the light
most favorable to the prosecution, the jury could have found that Peltier
committed the enhanced offense of
operating a motor vehicle in a public place while intoxicated with two previous
convictions for that offense.

We overrule Peltier’s second issue.

Conclusion

We affirm the judgment of the trial court. 

                                                                   

 

 

 

Michael
Massengale

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Massengale and Mirabal.*

Do
not publish.  Tex. R. App. P. 47.2(b).











*               The Honorable Margaret Garner Mirabal, Senior Justice,
Court of Appeals for the First District of Texas, sitting by assignment.