

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00316-CR

DARIN PREJEAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Darin Prejean appeals his conviction for driving while intoxicated (DWI).[2]  In one point, he argues that the arresting officer did not have legal justification to initiate a traffic stop and that the trial court therefore erred by denying his motion to suppress.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).

## Background Facts

On an early morning in November 2009, Flower Mound Police Department Officer Michael Draut was watching northbound traffic on Long Prairie Road when he saw appellant's Honda Odyssey "going over and coming back from left to right a couple of times."[3] Officer Draut started his in-car camera and began to follow appellant, who was continuing to weave.[4] Appellant weaved about five times in the course of a quarter of a mile. Officer Draut turned on his overhead patrol lights because he thought appellant was intoxicated or was having a medical emergency, and appellant pulled over. Officer Draut eventually arrested appellant for DWI, and the State charged him with the same offense.

Appellant sought suppression of all evidence connected to his detention or arrest; he contended that he was "stopped by an agent of the State . . . without reasonable suspicion . . . or other lawful authority" in violation of his constitutional and statutory rights. The trial court denied appellant's motion to suppress and entered the following findings of fact and conclusions of law:

> The Court having heard the evidence . . . and having observed the demeanor of the witness[] and the manner in which he testified, and having assessed his credibility and the weight accorded said

---

[3]Officer Draut has been a police officer for several years, taken DWI classes, and participated in DWI arrests and investigations.

[4]The State introduced the video recording from Officer Draut's camera into evidence. After watching the video, the trial judge said, "[W]hat I believe I saw was not only was he weaving within the lane, but I think he went over it or at least onto some of the stripes on the driver's side of the vehicle." We have reviewed the same video and agree that it shows appellant's weaving.

testimony, makes the follow findings of fact and conclusions of law based on the totality of the circumstances presented.

**FINDINGS OF FACT**

The Court finds as follows:

1.  Flower Mound Officer, Michael Draut, was on patrol . . . in the 1500 Block of Long Prairie Road at approximately 3:00 a.m. on November 8, 2009. . . .

2.  Officer Draut regularly patrols the above-mentioned area and has observed and investigated many intoxicated individuals driving home from bars located in Grapevine, Texas at this time of morning.

3.  Officer Draut observed [appellant] traveling northbound . . . . [Appellant] appeared to be weaving inside of [his] own lane on several occasions. Officer Draut thought [appellant] was possibly intoxicated due to the time of night, driving on the thoroughfare from Grapevine to Denton, and weaving within his own lane.

4.  Officer [Draut] conceded that he did not observe an actual traffic offense and there were no other cars on the roadway that would make the actual driving unsafe.

5.  Officer Draut stopped [appellant] because he suspected that he was intoxicated. . . . His suspicion was based on the totality of the circumstances, specifically due to the time of the night/early morning when he observed [appellant] driving, his familiarity with intoxicated individuals driving on this roadway, and weaving within a lane.

**CONCLUSIONS OF LAW**

1.  Flower Mound Officer Draut had reasonable suspicion to stop [appellant] to investigate whether the defendant was driving while intoxicated. . . .

2.  The stop of [appellant] was lawful.

A few months after the trial court denied appellant's suppression motion,

he pled nolo contendere. The trial court convicted him, assessed 160 days'

confinement as his punishment, and suspended the confinement to place him on community supervision for fifteen months.  Appellant filed notice of this appeal.

## The Legality of the Traffic Stop

Appellant argues that Officer Draut's traffic stop was not supported by reasonable suspicion and that the trial court should have granted his motion to suppress.[5]  We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and

---

[5]Appellant claims that the traffic stop was illegal under the federal and Texas constitutions, but he does not contend that the Texas constitution provides greater rights than the federal constitution.  Thus, we will examine his point under standards applicable to the federal constitution.  *See Welch v. State*, 93 S.W.3d 50, 52 & n.5 (Tex. Crim. App. 2002); *Reed v. State*, 308 S.W.3d 417, 419 n.3 (Tex. App.—Fort Worth 2010, no pet.).

(2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings.  *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  *Id.* at 818.  We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

5

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. And state law mandates that "[n]o evidence obtained by an officer or other person in violation of any provisions of . . . the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005); *see Bell v. State*, 169 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. ref'd). Stopping an automobile and detaining its occupants is a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772 (1996). Because the State stipulated that appellant's seizure occurred without a warrant, the State had the burden to prove the reasonableness of the seizure. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion is an objective standard that disregards any subjective intent of the officer making the stop; in other words, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. *Fernandez v. State*, 306 S.W.3d 354, 357 (Tex. App.—Fort Worth 2010, no pet.).

6

The court of criminal appeals recently repeated the standard for warrantless traffic stops. *See Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). The court explained,

> A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1 (1968). In order to stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 21. Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.
>
> . . . .
>
> . . . [T]ime of day is a relevant factor in determining reasonable suspicion. Similarly, . . . location near a bar district where police have made numerous DWI arrests is also a relevant factor in determining reasonable suspicion.

*Id.* (some citations omitted).

Thus, an officer may stop a driver based on a reasonable suspicion of DWI even when the driver has not violated a traffic law and has not endangered other drivers. *James v. State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Appellant argues that the "facts of the present case do not demonstrate conduct . . . that . . . tends to indicate intoxication." We disagree.

In *Foster*, an Austin police officer was stopped at a red light a few blocks from a bar district. 326 S.W.3d at 610. Foster drove his truck extremely close

behind the officer's vehicle, revved his engine, and lurched forward in what the officer believed to be an attempt to move into another lane. *Id.* The officer initiated a traffic stop out of a concern that Foster was impaired. *Id.* at 610–11. The court of criminal appeals held that the traffic stop was justified because it occurred in a location where intoxication was common, the time of night could have suggested that Foster was leaving the bar district while intoxicated, the officer knew of DWIs occurring in that area, and Foster's lurch was "aggressive." *Id.* at 613–14. Because the officer articulated something "more than an inchoate and unparticularized suspicion or hunch" that justified Foster's detention, the court of criminal appeals affirmed the trial court's judgment. *Id.* at 614 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989)).

In *Curtis v. State*, Curtis was driving on a highway when he weaved in and out of his lane over a short distance. 238 S.W.3d 376, 377 (Tex. Crim. App. 2007). State troopers initiated a traffic stop and arrested him for DWI. *Id.* After the Texarkana Court of Appeals held that the stop was not justified, the court of criminal appeals held that the troopers had reasonable suspicion of DWI because the stop occurred at about one o'clock in the morning, the arresting officer had received training in detecting DWIs, and Curtis's weaving at least three times over a short distance could have indicated his intoxication. *Id.* at 378–81.

Intermediate appellate courts, including our court, have approved traffic stops under similar circumstances. *See Dunkelberg v. State*, 276 S.W.3d 503, 504–06 (Tex. App.—Fort Worth 2008, pet. ref'd) (concluding that there was

8

reasonable suspicion for a stop when the officer saw a car weaving early in the morning, and after the officer activated his patrol lights, the car jumped a curb); *Ortiz v. State*, 930 S.W.2d 849, 853, 856 (Tex. App.—Tyler 1996, no pet.) (holding that officers' observation of a defendant's vehicle that weaved, hit a grassy median, and continued to weave within its lane two or three more times gave them reasonable suspicion that appellant was driving while intoxicated); *Davis v. State*, 923 S.W.2d 781, 784, 788 (Tex. App.—Beaumont 1996) (op. on reh'g) (holding that a traffic stop was proper where the driver "weav[ed] line to line in a lane of traffic" about three times), *rev'd on other grounds*, 947 S.W.2d 240 (Tex. Crim. App. 1997); *see also Walker v. State*, No. 02-04-00336-CR, 2006 WL 349704, at *4–5 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.) (mem. op., not designated for publication) (holding similarly and citing other cases reaching similar conclusions).

Officer Draut saw appellant weave five times over just a quarter of a mile. After watching the video taken from Officer Draut's camera, the trial court agreed that appellant had weaved (and so do we). Officer Draut said that Long Prairie Road is a "thoroughfare from Dallas, Grapevine, and Fort Worth to come through our town to get to Denton." He explained,

> [S]ince I've been working for Flower Mound, there's a couple of bars in Grapevine. There's the Gaylord, and I get a lot of intoxicated drivers that are coming from the south of that, and the traffic violations range from speeding to weaving to failing just to signal. And through my training and experience as of last night, I think I have about 83 [DWIs] of which I would say at least 80 percent are on that road at that time of night.

Officer Draut explained that the time of appellant's weaving was important because "typically at that time of night, that's when the bars are closing and people are leaving bars."

Viewing this evidence in the light most favorable to the trial court's ruling, we hold that appellant's repeated erratic driving, along with the early morning traffic stop and Officer Draut's experience with DWIs on Long Prairie Road, gave Officer Draut more than an "inchoate and unparticularlized suspicion or hunch" of appellant's DWI. *See Foster*, 326 S.W.3d at 614. Because the trial court did not err by concluding that Officer Draut had reasonable suspicion of DWI to detain appellant, we overrule appellant's point.

## Conclusion

Having overruled appellant's point, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 10, 2011