

# NUMBER 13-14-00321-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BRIAN BOLEN A/K/A
BRIAN P. BOLEN,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

**On appeal from the 445th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

By three issues, which we will address as one, appellant, Brian Bolen A/K/A Brian P. Bolen, challenges the trial court's denial of his motion to suppress evidence. We affirm.

## I.     BACKGROUND

The State indicted Bolen for:    (1) possession of marijuana in an amount of 2,000 pounds or less, but more than fifty pounds; and (2) possession of a controlled substance, penalty group one, in an amount of 400 grams or more.    *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.121(a), (b)(5); 481.115(a), (f) (West, Westlaw through 2015 R.S.).

Acting on a tip related to drug activity, officers entered a property in Cameron County and were given consent to search the property by its owner.    During the search, Bolen entered the property in a pickup truck through a gate in the fence line.    Upon spotting the officers, Bolen spun the pickup around and drove off at a high rate of speed away from the property being searched.    After taking officers on a high-speed chase, Bolen wrecked the truck he was driving into a set of trees, causing bundles of marijuana to fly out of the bed of the truck.    Police subsequently arrested Bolen and charged him as stated.

Bolen filed a pre-trial motion to suppress regarding the probable cause for the stop and search of his vehicle.    A hearing was held by the trial court where multiple law enforcement officers and Bolen testified, and the trial court denied Bolen's motion to suppress.    Bolen subsequently pleaded guilty and received a sentence of ten years imprisonment in the Texas Department of Criminal Justice–Institutional Division (TDCJ–ID).    However, Bolen retained the right to appeal any motions that were argued pre-trial as part of his plea agreement.    *See* TEX. CODE CRIM. PROC. ANN. art. 44.02 (West, Westlaw through 2015 R.S.).    He appeals the denial of his motion to suppress.

## II.     MOTION TO SUPPRESS

By his issues challenging the denial of his motion to suppress, Bolen argues that:

(1) there was no reasonable suspicion to stop or detain him at the time of the initial encounter; (2) an officer could not stop Bolen for turning or "fishtailing" on private property; and (3) the lawfulness of the search depends on the circumstances of the initial detention, not subsequent acts.[1] We will address his three issues as one. *See* TEX. R. APP. P. 47.1.

## A. Standard of Review

We review a trial court's decision on a motion to suppress for an abuse of discretion. *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Under our abuse of discretion analysis, we use a bifurcated standard of review. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State,* 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to its resolution of mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman,* 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State,* 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)).

## B. Applicable Law

A "law enforcement officer may stop and briefly detain a person for investigative

---

[1] During the pre-trial hearing on Bolen's motion to suppress, Bolen narrowed the scope of his general pre-trial motion to suppress. On questioning from the State, Bolen agreed that the scope of the motion was regarding the probable cause for the stop only. Bolen's trial counsel also informed the trial court of the two issues he was arguing: (1) was there reasonable suspicion to stop Bolen's vehicle, and (2) was there probable cause to search Bolen's vehicle or an exception to the requirement for a warrantless search. We believe these issues were more succinctly addressed in Bolen's appellate brief.

3

purposes on less information than is constitutionally required for probable cause to arrest." *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010); *see Terry v. Ohio*, 392 U.S. 1, 21 (1968). The "lower standard of reasonable suspicion is derived from the probable cause standard and applies only to those brief detentions which fall short of being full-scale searches and seizures." *Woods v. State*, 956 S.W.3d 33, 35 (Tex. Crim. App. 1997) (en banc). "A police officer has reasonable suspicion to detain [an individual] if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see United States v. Sokolow*, 490 U.S. 1, 7 (1989). "This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Derichsweiler*, 348 S.W.3d at 914; *see Terry*, 392 U.S.at 21–22.

Additionally, we must look to the "totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Derichsweiler*, 348 S.W.3d at 914; *see United States v. Cortez*, 449 U.S. 411, 417–18 (1981). "The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Derichsweiler*, 348 S.W.3d at 914 (quoting *Woods*, 956 S.W.2d at 28); *see Arguellez v. State*, 409 S.W.3d 657, 663 (Tex Crim. App. 2013). The "detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the

4

stop is to be considered in determining whether reasonable suspicion exists.'" *Derichsweiler*, 348 S.W.3d at 914.

**C.  Discussion**

Bolen first argues that there was no reasonable suspicion to stop or detain him. We disagree.   The cumulative information known to the officers at the time Bolen appeared on the scene and fled was enough for the officers to determine that reasonable suspicion existed.   *See id.*   The trial court issued extensive findings of fact and conclusions of law following the suppression hearing.   In relevant part, the trial court found:

## I.  FINDINGS OF FACT

. . . .

2.  Commander Leonel Silva of the Cameron County District Attorney's Office Special Investigations Unit testified that the Hidalgo County Narcotics Task Force forwarded intelligence regarding narcotics activity at a property on Altas Palmas Road in Harlingen, Texas.

3.  Commander Silva subsequently organized surveillance near the property.   Commander Silva testified that he observed constant vehicular traffic to and from the property.   The property was enclosed by a fence, and investigators observed livestock and buildings along with pedestrian and vehicular traffic.   Commander Silva testified that the pattern of traffic was consistent with that of narcotics activity.

. . . .

5.  Investigators then entered the property in six or seven unmarked vehicles and two marked Cameron County Sheriff's Department units.   Commander Silva then made contact with proprietor Jorge Videles, who signed consent to search form [sic]. . . .

6.  [Homeland Security Investigations] Special Agent [Tanner] Whatley testified that he wore a black bullet proof vest with POLICE prominently displayed, a badge, a drop-leg holster with a sidearm

5

and a submachine gun across his chest. He testified that all law enforcement officers were dressed in proper police identifiers.

. . . .

8.     Investigators then observed the driver of a red Ford F-150 truck, the Defendant, open the property gate, enter the property, and close the gate. The Defendant then drove into the open field and headed towards the investigators. Special Agent Whatley walked toward the vehicle to initiate contact with the driver. Whatley testified that he raised his hand, and made eye-contact with the driver, who then abruptly turned the vehicle, spinning his tires, and fish-tailed toward the gate.

9.     The Defendant then exited the property, closed the gate, and drove onto the roadway. . . .Special Agent Whatley then pushed through the gate with his truck. All other officers ran to their vehicles and according to testimony, the Defendant drove recklessly on Altas Palmas Road.

10.     The Defendant continued northbound on Altas Palmas Road at high rate of speed and weaving in and out of traffic. With lights and sirens, the two marked units took the lead in the pursuit of the Defendant. One marked unit crashed into a concrete traffic barrier. During the pursuit, the Defendant's [sic] drove in excess of 100 miles per hour.

11.     The Defendant ultimately entered a trailer park, at which time he drove over several fence points [sic] and wrecked into several palm trees. Two bundles of what appeared to be marihuana flew out of the truck bed. The Defendant ran from the crash site. Law enforcement chased the Defendant and apprehended him. Additional bundles remained in the truck bed. No search of the truck was necessary as the marihuana was in plain view. . . .

## II. CONCLUSIONS OF LAW

. . . .

2.     The Defendant entered the property during the investigation. Special Agent Whatley, wearing proper POLICE identifiers, approached the Defendant in an attempt to initiate verbal contact. Based on the initial report of narcotics activity on the property, the narcotics investigator had reasonable suspicion to speak with the Defendant. *Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997); *Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007).

An "individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see State v. Kerwick*, 393 S.W.3d 270, 276 (Tex. Crim. App. 2013). However, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 512 U.S. at 124. In *Wardlow*, police arrived at an area known for drug trafficking. *Id.* at 121. Upon noticing the police, Wardlow ran. *Id.* at 122. However, the Court found it was not just Wardlow's running that provided enough for reasonable suspicion, but also the facts that it was an area known for narcotics trafficking, that Wardlow had an opaque bag in his hand, and it was common for weapons to be near areas where drug trafficking occurs. *Id.* at 124–25. The Court agreed that all of those factors were relevant in making a determination for reasonable suspicion. *Id.*

Here, similar to *Wardlow*, Bolen's presence at the home was not the sole reason for the aroused suspicions of the officers, but "his unprovoked flight upon noticing the police" was a relevant factor. *Id.* The Supreme Court has "recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id.* at 124; *see United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). "Headlong flight–wherever it occurs–is the consummate act of evasion; [i]t is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124. "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and

7

remain silent in the face of police questioning." *Id.* at 125. Therefore, the "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id.*; *see Cortez*, 449 U.S. at 418.

Based on the actions officers observed, there was reasonable suspicion for the officers to attempt to make initial contact with Bolen. Special Agent Whatley testified during the hearing and explained that he attempted to make initial contact with Bolen, but Bolen fled. Whatley also testified that the search of the property was ongoing when Bolen entered the property, and Bolen's pickup was the only vehicle that came onto the property during the search. Based on the tip regarding drugs on the property, the surveillance by Silva of vehicles entering and exiting the property, and the ongoing property search at the time Bolen entered the property, we hold that reasonable suspicion existed for members of law enforcement to make contact with Bolen and ascertain why he had arrived at the property officers were searching. Once on the roadway and fleeing from police, Bolen committed various offenses including: evading officers with a motor vehicle, driving recklessly, as well as other traffic violations. *See* TEX. PENAL CODE ANN. § 38.04(b)(2) (West, Westlaw through 2015 R.S.); TEX. TRANSP. CODE ANN. § 545.401 (West, Westlaw through 2015 R.S.). Bolen then wrecked his vehicle, causing bundles of marijuana concealed in the bed of the pickup under mesquite logs and drywall, to fly out of the bed and land in the surrounding area. Officers were then able to discover multiple other bundles of marijuana in their plain view in the bed of the truck.

Bolen was never detained or stopped prior to his arrest, even though officers attempted to speak to him. His arrest was the initial detention. The subsequent search and arrest of Bolen came after felony offenses were committed in the presence of

8

officers.[2]  *See* TEX. CODE CRIM. PROC. ANN. art. 14.01.   Therefore, the trial court did not

abuse its discretion in denying his motion to suppress.

### III.   CONCLUSION

We affirm the trial court's judgment.


GINA M. BENAVIDES,
Justice


Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
19th day of November, 2015.

---

[2]  Article 14.01 of the code of criminal procedure states: (a) a peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classified as a felony or as an offense against the public peace; or (b) a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. (West, Westlaw through 2015 R.S.).