# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00456-CR

**The State of Texas, Appellant**

**v.**

**Brandon David Prince, Appellee**

**FROM COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
NO. 17-05555-2, HONORABLE LAURA B. BARKER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Following a traffic stop, Brandon David Prince was charged with driving while intoxicated with a blood-alcohol concentration of 0.15 or more. *See* Tex. Penal Code § 49.04(a), (d). Prior to trial, Prince filed a motion to suppress testimony and other evidence pertaining to the traffic stop. After conducting a hearing on the motion, the trial court granted the motion to suppress and issued findings of fact and conclusions of law setting out the reasons for its ruling. The State appealed the ruling by the trial court. *See* Tex. Code Crim. Proc. art. 44.01(a)(5). We abated this appeal and remanded the cause to the trial court to allow the trial court to prepare supplemental findings of fact and conclusions of law. *See State v. Prince*, No. 03-18-00456-CR, 2018 WL 6321118 (Tex. App.—Austin Dec. 4, 2018) (per curiam) (order & mem. op., not designated for publication); *see also State v. Mendoza*, 365 S.W.3d 666, 670, 673 (Tex. Crim. App. 2012) (explaining that appellate courts may abate and remand case for additional findings and conclusions, including

credibility determinations). The trial court prepared its supplemental findings and conclusions, and those supplemental findings and conclusions have been filed with this Court. On appeal, the State challenges the adequacy of the trial court's supplemental findings and conclusions and asserts that the traffic stop was supported by reasonable suspicion. In light of the supplemental findings and conclusions, we conclude that the trial court did not abuse its discretion by granting Prince's motion to suppress and, accordingly, affirm the trial court's order.

**BACKGROUND**

After Prince was charged with driving while intoxicated, he filed a motion to suppress evidence obtained during the traffic stop and argued that there was no reasonable suspicion to justify the traffic stop. Officer John Weston performed the traffic stop, and he was the only witness to testify at the suppression hearing. Officer Weston testified that he initiated the traffic stop after observing Prince commit several traffic violations when turning right out of a parking lot at approximately 10:30 p.m. on a Thursday night, which Officer Weston described as "a big party night" because "a lot of people consume alcohol on" that night. Regarding the parking lot, Officer Weston explained that two bars use the lot, which has a private driveway connected to a public road. Officer Weston testified that the public road is a three-lane road with two lanes of traffic and a center turn lane separated from the other lanes by "a solid yellow line along" both sides of the lane.

Regarding the traffic violations, Officer Weston recalled that he observed Prince violate four provisions of the Transportation Code. First, Officer Weston explained that Prince violated section 545.256, which specifies, in relevant part, that a driver "emerging from an alley, driveway, or building in a business or residence district" must "stop the vehicle before moving on

2

a sidewalk or the sidewalk area extending across an alley or driveway." Tex. Transp. Code § 545.256. Second, Officer Weston testified that he observed Prince violate section 545.101, which specifies that a driver who is turning right must "make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway." *Id.* § 545.101(a). Third, Officer Weston stated that he observed Prince violate section 545.060, which directs drivers to drive "as nearly as practical entirely within a single lane" and not to drive in the center lane of a three-lane road unless passing another vehicle, turning left, or following the directions from "an official traffic-control device." *Id.* § 545.060(a)-(b). Finally, Officer Weston related that the commission of the three traffic infractions also constituted a violation of section 545.401, which provides that "[a] person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a); *see also id.* § 545.401(c) (specifying that provision applies to parking lots, highways, and other public places).

When discussing his observations that night, Officer Weston stated that at around 10:30 p.m. he observed Prince's truck leaving a parking lot used by two bars and other businesses and turning right onto a roadway. More specifically, Officer Weston recalled that Prince "failed to stop for moving onto the sidewalk area" intersecting the parking lot's driveway and "exit[ed] the private drive at a high rate of speed," causing his tires to screech and resulting in his truck "almost fishtail[ing]" and in him having "to jerk the wheel back left in order to keep himself on the roadway and from going into the ditch." However, Officer Weston admitted that he was not sure if Prince's vehicle crossed the white line nearest to the parking lot when Prince took corrective action. Furthermore, Officer Weston stated that Prince failed "to maintain a single lane of traffic" after

3

leaving the parking lot because he crossed "into the center lane" when his two left tires crossed the yellow median. Although Officer Weston agreed that the center lane was not a lane of oncoming traffic and that there were no cars immediately ahead of Prince in the center lane, Officer Weston asserted that Prince committed a traffic violation by crossing into the center lane because he was not attempting to make a left turn or attempting to pass someone and because no traffic-control device was in place directing Prince to drive in the center lane. Moreover, Officer Weston explained that as Prince was leaving the parking lot, he "failed to make the right turn as closely as practical to the right edge" of the road. In his testimony, Officer Weston admitted that none of the traffic violations were recorded on his dashboard camera.

During his cross-examination, Officer Weston agreed that he did not list each traffic violation in his police report or in his affidavit for arrest and that the only offense he described in general terms in his arrest affidavit was the failure to maintain a single lane. Additionally, Officer Weston stated that he understood that trial courts make a determination regarding reasonable suspicion based on the totality of the circumstances and that officers should include all the information that they have in their reports. Relatedly, Officer Weston conceded that his memory of the events in question "was fresher" when he documented the incident in his official report and in his arrest affidavit. Furthermore, Officer Weston admitted that he did not mention all of the Transportation Code provisions or state that Prince was driving recklessly during his testimony at the automatic-license-revocation hearing because at the time he was unaware of which specific provisions applied. Moreover, although Officer Weston related that he knew what types of driving constitute violations of the Transportation Code and explained that he was aware of all of the traffic

4

violations at the time of the traffic stop even though he did not mention all of them, he stated that he could not explain why during the license-revocation hearing he did not testify that Prince was driving recklessly or mention all of the traffic violations in his report.

Additionally, after the trial court admitted and played a recording of Officer Weston's interactions with Prince during the traffic stop, Officer Weston agreed that he told Prince that he "crossed . . . both lanes and almost into the center lane there when he exited the parking lot"; however, Officer Weston explained that he "misspoke" when he told Prince that he had crossed two lanes of traffic because there was only one lane of traffic before the center lane and that he similarly misspoke when he said that Prince's vehicle "almost" went into the center lane. When discussing the recording, Officer Weston agreed that the area in which Prince allegedly committed the traffic violations was "[n]ot very well lit."

In addition to mentioning the four alleged violations of the Transportation Code, Officer Weston also discussed whether he had reasonable suspicion to believe that Prince was driving while intoxicated before interacting with Prince during the traffic stop. Specifically, Officer Weston responded affirmatively when asked about whether he lacked "sufficient facts to believe that [Prince] was intoxicated" prior to smelling the alcohol on Prince's breath during the traffic stop and stated that he did not have a firm belief regarding whether Prince was intoxicated until after he personally interacted with Prince. However, Officer Weston also explained that he had reasonable suspicion to believe that Prince was driving while intoxicated based on the time of day at issue and based on his observations of Prince's traffic violations, of the manner in which Prince was driving, and of Prince leaving a parking lot used by two bars.

At the conclusion of the hearing, the trial court granted the motion to suppress and issued the following findings of fact and conclusions of law that the State references in its appellate briefing:

**Findings of Fact**

3.  The arrest warrant in this case alleges that Defendant "quickly" exited a parking lot while "screeching" his tires, crossed a yellow line, and then over-corrected into a lane of travel. . . .

. . .

9.  Weston testified that spinning of tires did not constitute a Transportation Code violation.

. . .

11.  Weston testified that at the time he activated his lights and siren to detain Defendant, he had no "reasonable specific articulable facts" to believe Defendant was intoxicated.

**Conclusions of Law**

6.  Likewise, there was no evidence presented that the "screeching" of tires in this case was a violation of the Transportation Code or that the "screeching" of tires amounted to reasonable suspicion which would justify a warrantless detention.

(Record cites removed).

In response to our abatement-and-remand order, the trial court issued the following supplemental findings of fact and conclusions of law relevant to this appeal:

**Findings of Fact**

2. At around 10:30 p.m., Officer Weston initiated a traffic stop that resulted in Defendant's arrest . . . .

3. Officer Weston saw the Defendant's vehicle . . . exit a shopping center and private parking lot that contained one bar . . . [and] another restaurant that sells alcohol . . . .

4. At the location where Officer Weston observed Defendant, a sidewalk runs parallel to [the road].

5. At the location, [the road] has three lanes: one going southbound, one going northbound, and a center lane with solid yellow lines along the outside and dashed yellow lines along the inside.

6. Although Officer Weston's patrol car was equipped with a camera, the camera system did not record Defendant's driving because the camera system only activates to 30 seconds prior to Officer Weston turning on his overhead lights.

7. Officer Weston made an affidavit after Defendant's arrest in support of his arrest and detention, and in the affidavit, Officer Weston did not list specific violations of the Transportation Code.

8. Officer Weston made a police report documenting Defendant's stop and arrest at the end of his shift when his memory was fresher. Officer Weston did not list additional violations in his report separate from his affidavit.

9. Officer Weston testified previously at an ALR [automatic-license-revocation] hearing. Officer Weston did not mention in his testimony and did not refer to sections 545.256 or 545.101 of the Transportation Code, nor did he mention anything about reckless driving.

10. Officer Weston testified that he "misspoke" when he told the Defendant that he had crossed two lanes of traffic and that he "misspoke" when he said that the Defendant's vehicle "almost" went into the center lane.

11. Officer Weston testified that the Defendant did not cross over into an oncoming lane of traffic and there were no cars that were in danger on the roadway or pedestrians that were in danger that night.

12. Because Officer Weston did not mention specific sections of the Transportation Code in his probable cause affidavit, in his offense report, or in his ALR testimony,

the Court is left to determine whether Officer Weston had reasonable suspicion to stop Defendant based upon a credibility determination regarding Officer Weston's testimony pertaining to the alleged violations.

13. This Court finds Officer Weston's testimony that Defendant left a parking lot without stopping at the sidewalk not credible and the alleged traffic offense was not recorded.

14. This Court finds that Officer Weston's testimony that he saw Defendant drive at a high rate of speed while "screeching" his tires and almost "fishtailed" not credible and the alleged offense was not recorded.

15. This Court finds that Officer Weston's testimony that he saw Defendant nearly lose control of his vehicle after overcorrecting not credible and the alleged conduct was not recorded.

16. This Court finds that Officer Weston's testimony that he observed the Defendant make a right turn that was not close to the right edge of the roadway not credible and the alleged offense was not recorded.

17. This Court finds that Officer Weston's testimony that he observed the Defendant fail to maintain a single lane of traffic not credible and the alleged offense was not recorded.

18. This Court finds that Officer Weston's testimony that Defendant crossed into the center lane and that he was not attempting to make a left turn or pass someone is not credible and is refuted by the video evidence admitted at the hearing on the Defendant's Motion to Suppress.

. . .

20. Because of the inconsistencies in Officer Weston's testimony this Court finds that there is no credible evidence to conclude that Defendant violated section 545.060(b) of the Texas Transportation Code.

21. Because of the inconsistencies in Officer Weston's testimony this Court finds there is no credible evidence to conclude that Defendant violated any traffic laws.

22. Because of the inconsistencies in Officer Weston's testimony this Court finds there is no credible evidence to conclude that reasonable suspicion existed to believe the Defendant was driving while intoxicated at the time Officer Weston initiated the traffic stop in this case.

**Conclusions of Law**

1. This Court is unaware of any caselaw which provides that leaving a shopping center parking lot that includes one or more bars on a Thursday night constitutes reasonable suspicion to believe a driver exiting that parking lot is driving while intoxicated.

2. This Court finds and concludes that there was no reasonable suspicion to believe that the Defendant violated sections 545.060(a), 545.060(b), 545.101(a), 545.256, and 545.401(a) of the Texas Transportation Code.

3. This Court finds and concludes that there was no objective basis for a police officer to reasonably believe the Defendant was driving while intoxicated at the time Officer Weston initiated the traffic stop in this case.

(Record cites removed).

On appeal, the State challenges the trial court's ruling on the motion to suppress.

**STANDARD OF REVIEW AND GOVERNING LAW**

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts

afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). If the trial court makes a finding of fact that is derived from video evidence admitted at a suppression hearing, that finding "is still reviewed under a deferential standard." *Carter v. State*, 309 S.W.3d 31, 40 & n.47 (Tex. Crim. App. 2010); *see Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony; accordingly, the trial court may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court observes first hand the demeanor and appearance of a witness, as opposed to an appellate court, "which can only read an impersonal record." *Id.* In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

"The defendant in a criminal proceeding who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct." *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Russell*

10

*v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986), *disapproved in part on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n. 2 (Tex. Crim. App. 2006) . "The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances." *Amador*, 221 S.W.3d at 672-73.

"A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts." *Prejean v. State*, No. 02-10-00316-CR, 2011 WL 856901, at *3 (Tex. App.—Fort Worth Mar. 10, 2011, no pet.) (mem. op., not designated for publication). "Routine traffic stops are analogous to investigative detentions." *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. dism'd, untimely filed); *see also State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (describing types of interactions between citizens and law-enforcement personnel). Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and an officer may initiate a traffic stop if he has reasonable suspicion that a crime is about to be committed or has been committed, *see Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014).

For reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd). In other words, "for a peace officer to stop a motorist to investigate a traffic infraction, . . . 'proof of the actual commission of the offense is not a requisite.'" *Leming v. State*, 493 S.W.3d 552, 561 (Tex. Crim. App. 2016) (quoting *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977)); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative

11

purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably warrant detention). Rather, reasonable suspicion "requires only 'some minimal level of objective justification' for the stop." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). Accordingly, "[a]t a suppression hearing, the State need not establish that a crime occurred prior to the investigatory stop." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

## DISCUSSION

**Adequacy of the Supplemental Findings and Conclusions**

In its first issue on appeal, the State contends that the trial court's supplemental findings and conclusions "are silent on salient facts necessary for a meaningful review of whether the trial court misapplied the law when it determined that, objectively and by the totality of the circumstances," the traffic stop was not supported by reasonable suspicion. For example, the State asserts that the trial court made insufficient "findings of historical fact regarding [Prince]'s driving." Relatedly, the State argues that the trial court's credibility determinations—particularly those pertaining to whether Prince maintained a single lane of traffic, failed to make a right turn as close as possible to the right side of the road, and left the parking lot without stopping—"were legal conclusions in the guise of fact findings" and that those credibility determinations have no "findings of historical fact to support" them. For these reasons, the State contends that this Court should remand the case to the trial court so that the court can clarify its supplemental findings and conclusions.

Initially, we note that the State does not specifically challenge in this issue the trial court's determination regarding whether there was reasonable suspicion to believe that Prince was

12

driving while intoxicated and instead focuses on the findings and conclusions pertaining to the violations of the Transportation Code that Officer Weston testified that he observed, and we will similarly limit our discussion in this issue. As set out previously, Officer Weston testified that he initiated the traffic stop after observing Prince commit three traffic violations by failing to maintain his vehicle within a single lane and improperly driving in the center lane, *see* Tex. Transp. Code § 545.060(a)-(b), leaving the parking lot and crossing a sidewalk without stopping, *see id.* § 545.256, and failing to make a right turn as close as possible to the right edge of the road, *see id.* § 545.101(a). In addition, Officer Weston explained that his observation of the three traffic offenses listed above allowed him to conclude that Prince drove his vehicle in a reckless manner in contravention of the Transportation Code. *See id.* § 545.401(a). When discussing these violations, Officer Weston also related that he observed Prince driving too quickly and "screech[ing]" his tires when leaving the parking lot, which resulted in Prince nearly losing control of the vehicle and almost fishtailing.

As part of its findings, the trial court explained that none of the alleged traffic violations or erratic driving at issue were recorded. When assessing the credibility of Officer Weston's testimony, the trial court was able to consider the inconsistencies between Officer Weston's testimony given at the suppression hearing regarding the events and his description of his prior testimony from the license-revocation hearing, the testimony from Officer Weston indicating that he did not mention all of these alleged violations in his report or in his arrest affidavit, the concession by Officer Weston that his recollection of the events was stronger on the night in question than it was at the suppression hearing, and the portion of the recording in which Officer Weston stated that Prince "almost" went into the center lane that conflicted with Officer Weston's testimony

13

that Prince crossed into the center lane. With the preceding in mind, the trial court found Officer Weston's testimony not credible regarding Prince's alleged failure to maintain a single lane of traffic, his alleged crossing into the center lane, his alleged failure to make a right turn as close as practicable to the right side of the road, and his alleged failure to stop at the sidewalk crossing the driveway of the parking lot. Similarly, the trial court found Officer Weston's testimony not credible regarding Prince speeding out of the parking lot and nearly losing control of his vehicle.

Because the supplemental findings and conclusions set out the background and circumstances leading up to the traffic stop and identify and address all of the bases upon which the State asserted that there was reasonable suspicion to believe that Prince committed a traffic offense, we cannot agree with the State's assertion that the supplemental findings and conclusions are inadequate for appellate review of the trial court's ruling on the motion to suppress and the trial court's ultimate determination that reasonable suspicion did not support the traffic stop. Moreover, given our standard of review and the record before this Court, we must accept the trial court's credibility determinations and must conclude that the trial court did not abuse its discretion by making those determinations. *See Amador*, 221 S.W.3d at 673.

Furthermore, as set out above, the alleged traffic offenses were not recorded, and Officer Weston was the only witness at the suppression hearing. In the absence of any testimony found credible by the trial court that supported the suspected traffic violations, we cannot conclude that the trial court erred in applying the law of reasonable suspicion to the facts as it found them. *See State v. Egbert*, No. 03-16-00286-CR, 2017 WL 875305, at \*3 (Tex. App.—Austin Mar. 2, 2017, no pet.) (mem. op., not designated for publication). In other words, we conclude that the trial

14

court did not err by determining that the traffic stop was not supported by reasonable suspicion to believe that Prince committed any of the following traffic violations: (1) failing to maintain his vehicle in a single lane or improperly driving in the center lane, (2) crossing a sidewalk without stopping, or (3) failing to make a right turn as close to the right side of the road as practical. *See* Tex. Transp. Code §§ 545.060(a)-(b), .101(a), .256. Further, given that those violations served as the basis for Officer Weston's assertion that Prince drove in a reckless manner, we similarly conclude that the trial court did not err by concluding that the traffic stop was not supported by reasonable suspicion to believe that Prince was driving in a reckless manner. *See id.* § 545.401(a).

In an alternative set of arguments in this issue, the State asserts that two of the trial court's supplemental findings—findings 14 and 15—are potentially "ambiguous" but that if those findings are "construed in context of the record," those findings reveal that the trial court determined that Prince "overcorrected" when pulling out of the parking lot and "screech[ed]" his tires, which the State insists in its next issue could support a determination that there was reasonable suspicion to believe that Prince was driving while intoxicated. Regarding supplemental finding 14, the State notes that the finding mentioned Officer Weston's testimony about Prince speeding, screeching his tires, and nearly fishtailing his car, but the State argues that the credibility determination made by the trial court in supplemental finding 14 only extended to Officer Weston's testimony about Prince speeding and did not cover the other portions of Officer Weston's testimony mentioned in the finding. Moreover, the State contends that its more limited reading of the credibility determination is consistent with the trial court's original findings and conclusions stating that Officer Weston mentioned in his affidavit for arrest shortly after the traffic stop that Prince "screech[ed]" his tires

15

and that there is no Transportation Code provision prohibiting someone from "screeching tires." Similarly, regarding supplemental finding 15, the State observes that the finding refers to whether Prince "nearly los[t] control of his vehicle" and to whether Prince "overcorrected," but the State urges that the credibility determination was limited to Officer Weston's testimony regarding whether Prince lost control and did not comment on Officer Weston's testimony about whether Prince overcorrected. As support for its assertion, the State notes that Officer Weston mentioned in his affidavit that Prince overcorrected.

We disagree with the State's construction of supplemental findings 14 and 15. In its supplemental findings, the trial court explained that the various alleged offenses as well as the erratic driving described by Officer Weston were not recorded. Moreover, the trial court stated in supplemental finding 12 that it was required to evaluate whether there was reasonable suspicion to initiate the traffic stop based on a global "credibility determination regarding Officer Weston's testimony" discussing the alleged traffic violations. The trial court ultimately concluded that "there was no reasonable suspicion to believe that" Prince committed any violations of the Transportation Code mentioned by Officer Weston. Additionally, in each of its specific credibility determinations, the trial court determined that Officer Weston was not credible. The court also determined that there was no credible evidence from which to conclude that Prince committed any traffic violations.

In light of the preceding, we believe that supplemental findings 14 and 15 should be read as determining that the following portions of Officer Weston's testimony were not credible: that Officer Weston noticed Prince speeding, "screeching" his tires, almost "fishtail[ing]," nearly losing control of his car, and "overcorrecting" when trying to maintain control of his car.

16

For all of the reasons previously given, we overrule the State's first issue on appeal.

**Driving While Intoxicated**

In its second issue on appeal, the State contends that the trial court abused its discretion by granting Prince's motion to suppress because "reasonable suspicion existed to detain [Prince] for driving while intoxicated." In other words, the State asserts that when "viewed objectively," the "articulable facts known to [Officer] Weston at the time of the detention and the rational inferences from those facts . . . provided reasonable suspicion that [Prince] was driving while intoxicated." As support for this issue, the State notes that the trial court found that at 10:30 p.m. Prince left the parking lot of a shopping center with two bars. Further, the State asserts, as in the previous issue, that the trial court found that Prince's tires screeched when he left the parking lot and that he overcorrected after making a right turn out of the parking lot. In light of the preceding, the State contends that the totality of the "circumstances establish reasonable suspicion that [Prince] was driving while intoxicated." *See* Tex. Penal Code §§ 49.04 (setting out elements of offense of driving while intoxicated), .01(2)(A); *cf. Foster*, 326 S.W.3d at 614 (determining that trial court's ruling denying motion to suppress should be upheld, in part, given time of night at which traffic stop occurred, location near bar district, and defendant's "aggressive driving").

Although the State relies on testimony from Officer Weston about Prince screeching his tires and overcorrecting after turning, as discussed previously, the trial court found Officer Weston's testimony not credible regarding the alleged traffic violations and the manner in which Prince was driving. It specifically determined that the portions of Officer Weston's testimony stating that Prince overcorrected his car when turning and screeched his tires when leaving the

17

parking lot were both not credible. Moreover, we concluded that the trial court did not abuse its discretion in making those determinations.

When setting out its reasoning regarding whether the remaining factors relied on by the State—the time of day and location near two bars—were sufficient to establishing reasonable suspicion to believe that Prince was driving while intoxicated, the trial court noted its credibility determinations regarding Officer Weston's testimony and explained that observing an individual leaving a parking lot used by two bars at night does not provide law-enforcement personnel with "reasonable suspicion to believe" that the "driver exiting the parking lot is driving while intoxicated." Based on our resolution of the issues discussed above, we conclude that the trial court did not err in applying the law of reasonable suspicion to the facts as it found them. Although the time at which a traffic stop occurs and a driver's proximity to a bar district are factors that courts have considered when determining whether there is reasonable suspicion to believe that an individual is driving while intoxicated, *cf. Foster*, 326 S.W.3d at 614, we have been unable to find cases standing for the proposition that those factors, without more, can provide law-enforcement officers with reasonable suspicion to initiate a traffic stop for driving while intoxicated, *see State v. Calzada-Rodriguez*, No. 03-18-00495-CR, 2019 WL 10314 76, at *4-5 (Tex. App.—Austin Mar. 5, 2019, no pet.) (mem. op., not designated for publication) (distinguishing *Foster* and upholding trial court's order granting motion to suppress where defendant "was not driving aggressively near a bar district"); *State v. Bernard*, 545 S.W.3d 700, 706, 707 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that, unlike in *Foster*, "there is no evidence of aggressive driving or the location of the stop being near a bar district where numerous DWI arrests

18

had been made" and that "[t]he only relevant evidence" showed that defendant "was stopped . . . during the early morning hours" and concluding that officer "lacked reasonable suspicion for the stop").[1]

For all of the reasons previously given, we overrule the State's second issue on appeal and conclude that the district court did not abuse its discretion by granting Prince's motion to suppress.

## CONCLUSION

Having overruled all of the State's issues on appeal, we affirm the trial court's order granting Prince's motion to suppress.

---

[1] In this issue, the State also contends that the trial court erred when it found in original finding 11 that Officer "Weston did not personally have 'reasonable specific articulable facts' to believe" that Prince was intoxicated. In essence, the State argues that the trial court should have disregarded the subjective belief of Officer Weston and instead should have determined "whether there was an objectively justifiable basis for the detention." *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Further, the State reasserts that the time of day that Prince was seen driving, the location where he was driving, and the manner in which he was driving "provided an objective basis for the detention."

As an initial matter, we note that in the finding at issue the trial court was summarizing the testimony from the suppression hearing by stating that Officer Weston "testified" that he did not have a basis to believe that Prince was intoxicated when he initiated the traffic stop. Accordingly, we do not agree with the State's suggestion that by making this finding, the trial court did not consider whether there was an objective basis justifying the detention. On the contrary, the trial court considered the testimony and other evidence presented at the hearing before determining that the portions of Officer Weston's testimony discussing the manner in which Prince was driving and the alleged traffic violations were not credible. In light of those credibility determinations, the trial court concluded that there was no objective basis to believe that Prince was driving while intoxicated. Given our resolution of the State's prior arguments in this issue and in its first issue, we cannot conclude that the trial court abused its discretion when making the finding or misapplied the law.

19

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   May 1, 2019

Do Not Publish